USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12-15-10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
GUAN MING LIN, et al.,                :
                                      :      10 Civ. 1335 (VM)
                   Plaintiffs,        :
                                      :      **DECISION AND ORDER**
      -  against  -                   :
                                      :
BENIHANA NAT'L CORP., et al,          :
                                      :
                   Defendants.        :
------------------------------------X
**VICTOR MARRERO, United States District Judge.**

## I.  BACKGROUND

Plaintiffs Guang Ming Lin, Qi Li, and Zeng Guan Li ("Plaintiffs") brought this action alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the New York Labor Law and have moved for collective certification of their FLSA claims, approval to issue a collective action notice, and disclosure by defendants of information relating to current and former employees who could be members of a potential class.

By Order dated November 9, 2010, Magistrate Judge James Francis IV, to whom this matter had been referred for supervision of pretrial proceedings, issued an a Report and Recommendation (the "Report"), a copy of which is attached and incorporated herein, recommending that  Plaintiffs' motion for class certification and approval of notification be denied without prejudice to renewal after discovery.  The Report further recommended that Plaintiffs' request for an order directing defendants to produce contact information for employees of defendants within the past three years be granted. No objections to the Report were filed by either party.

For the reasons stated below, the Court adopts the recommendations of the Report in their entirety.

## II.   **STANDARD OF REVIEW**

A district court evaluating a Magistrate Judge's report may adopt those portions of the report to which no "specific, written objection" is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law.   Fed. R. Civ. P. 72(b); see also Thomas v. Arn, 474 U.S. 140, 149 (1985); Greene v. WCI Holding Corp., 956 F. Supp. 509, 513 (S.D.N.Y. 1997).   The Court is not required to review any portion of a Magistrate Judge's report that is not the subject of an objection.   See Thomas, 474 U.S. at 149.   A district judge may accept, set aside, or modify, in whole or in part, the findings and recommendations of the Magistrate Judge as to such matters.   See Fed. R. Civ. P. 72(b); DeLuca v. Lord, 858 F. Supp. 1330, 1345 (S.D.N.Y. 1994).

## III.   **DISCUSSION**

Having conducted a review of the full factual record in this litigation, including the pleadings, and the parties' respective papers submitted in connection with the underlying motion, as well as the Report and applicable legal authorities, the Court concludes that the findings, reasoning, and legal support for the Report's recommendations are not clearly erroneous or contrary to law and are thus warranted.   Accordingly, for substantially the reasons set forth in the Report the Court adopts the Report's factual and legal

analyses and determinations, as well as its substantive recommendations, in their entirety.

## IV. ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the Report and Recommendation of Magistrate Judge James Francis dated November 9, 2010 (Docket No. 60) is adopted in its entirety, and the motion (Docket No. 35) of plaintiffs Guan Ming Lin, Qi Li and Zeng Guan Li ("Plaintiffs") for collective certification and approval of notification is DENIED without prejudice, and Plaintiffs' request for an order directing defendants to produce contact information for their employees for the past three years is GRANTED.

**SO ORDERED.**

Dated:     NEW YORK, NEW YORK
           15 December 2010

Victor Marrero
U.S.D.J.

-3-

**GUAN MING LIN, et al. v. BENIHANA NAT'L CORP., et al**

**10 Civ. 1335**

**Report and Recommendation of
Magistrate Judge James Francis IV
dated November 9, 2010**

**Attachment to the Court's
Decision and Order
dated December 15, 2010**



UNITED STATES DISTRICT COURT                    **(ECF)**
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
GUAN MING LIN, QI LI and ZENG      : 10 Civ. 1335 (VM) (JCF)
GUAN LI, on behalf of themselves   :
and others similarly situated,     :        REPORT AND
                                   :     RECOMMENDATION
                Plaintiffs,        :
                                   :
        - against -                :
                                   :
BENIHANA NATIONAL CORP., BENIHANA  :
NEW YORK CORP., HARU HOLDING CORP.,:
HARU AMSTERDAM AVENUE CORP., HARU  :
GRAMERCY PARK CORP., HARU THIRD    :
AVENUE CORP., HARU TOO, INC., HARU :
WALL STREET CORP., JOEL SCHWARTZ,  :
and BENIHANA INC.,                 :
                                   :
                Defendants.        :
- - - - - - - - - - - - - - - - - - -:

TO THE HONORABLE VICTOR MARRERO, U.S.D.J:

The plaintiffs, current and former delivery persons at Haru Sake Bar, a restaurant in New York City, bring this action pursuant to the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 et seq., and New York Labor Law ("NYLL"), seeking unpaid hourly and overtime compensation, reimbursement for expenses incurred in performance of their jobs, liquidated damages, and attorneys' fees and costs.   The plaintiffs have moved pursuant to 29 U.S.C. § 216(b) for (1) collective action certification of their FLSA claims; (2) approval and issuance of collective action notice; and (3) disclosure of the names, addresses, telephone numbers, social security numbers, and dates of employment of all delivery persons

1

employed by defendants within the past three years.   For the
reasons that follow, I recommend that the plaintiffs' motion be
denied in part and granted in part.

<u>Background</u>

The three plaintiffs are current and former employees of Haru
Sake Bar, a restaurant owned and operated by defendant Haru Too,
Inc. ("Haru Too"), and located at 1327 Third Avenue in Manhattan.
(Second Amended Complaint, ¶¶ 31, 33, 34; Memorandum of Law in
Support of Defendants' Opposition to Plaintiffs' Motion for
Conditional Collective Certification ("Def. Memo.") at 1, 3-4).
Plaintiffs Guan Ming Lin and Zeng Guan Li have been employed by
Haru Too as delivery persons since May 2004 and May 2006,
respectively; Mr. Lin is paid a base salary of "up to $4.90 per
hour," while Zeng Guan Li's base salary is "up to $7.50 per hour."
(Declaration of Guan Ming Lin dated June 7, 2010 ("Lin Decl."), ¶¶
1, 2; Declaration of Zeng Guan Li dated June 7, 2010 ("Guan Li
Decl."), ¶¶ 1, 2).  Plaintiff Qi Li was employed by Haru Too as a
delivery person from 2001 until August of 2009; prior to that, he
was employed at another of the Haru restaurants, located at 433
Amsterdam Avenue in Manhattan.   (Declaration of Qi Li dated July
13, 2010 ("Qi Li Decl."), ¶ 1).   Qi Li states that the defendant
employers paid him a base salary of up to $9.00 per hour but that
he did not receive overtime compensation despite working up to 50

2

hours per week.  (Qi Li Decl., ¶¶ 2, 3, 4).  The variation in the plaintiffs' base rates of pay is due to their using different types of vehicles to make deliveries -- delivery persons who drive faster vehicles, such as mopeds and motorbikes, make higher base salaries, while delivery persons who ride bicycles earn lower base salaries. (Plaintiff's Reply Memorandum of Law in Support of Plaintiff's Motion for Conditional Collective Certification and for Court Facilitation of Notice Pursuant to 29 U.S.C. § 216(b) ("Pl. Reply") at 5).

All three plaintiffs allege that they have not been "reimbursed for uniform expenses" or for "the purchase price, gas, repair, and maintenance" of the motorcycles, motorbikes, and bicycles that they use to deliver food.  (Lin Decl., ¶ 3; Qi Li Decl., ¶ 5; Guan Li Decl., ¶ 3).  They also state that they have observed "other employees" not being reimbursed for uniform expenses or for "the purchase price, gas, repair, and maintenance of the motorcycles, motorbikes and bicycles used for delivering food."  (Lin Decl., ¶ 4; Qi Li Decl., ¶ 6; Guan Li Decl., ¶ 4). Mr. Lin alleges that his hourly base salary of $4.90 is "less than the minimum wage" and that he has observed other employees also being "paid a base salary which was less than the minimum wage." (Lin Decl., ¶¶ 2, 4).  In addition, the declarations of all three plaintiffs state: "With regards to tips reported for tax purposes,

3

Defendants automatically reported 10% of all gross sales of food delivered as tips receives [sic] by delivery persons (including myself), even though we may not receive 10% tips on the gross sale of food." (Lin Decl., ¶ 6; Qi Li Decl., ¶ 7; Guan Li Decl., ¶ 6).

Defendants Haru Too, Haru Amsterdam Avenue Corp., Haru Gramercy Park Corp., Haru Park Avenue Corp., Haru Third Avenue Corp., and Haru Wall Street Corp. each own and operate individual Haru restaurants in different locations around New York City. (Def. Memo. at 3).[1]   All of the aforementioned defendants (collectively, "the Haru restaurants") are wholly-owned subsidiaries of defendant Haru Holding Corp.[2]  (Def. Memo. at 3). The Haru restaurants print shared business cards and operate a single website, at which visitors can apply for a job at any of the Haru restaurants or purchase a gift card that is valid at any of the Haru restaurants. (Haru business card, attached as Exh. B to Pl. Reply; Screen shot of  Haru "Employment" webpage (May 10, 2010), attached as Exh. F to Pl. Reply; Screen shot of Haru "Gift

---

[1] I rely here on statements made in the defendants' memorandum of law because they have not provided any supporting factual documents illustrating their corporate structure.

[2] Haru Holding Corp. is in turn wholly owned by Benihana National Corp., which is itself wholly owned by Benihana, Inc. (Def. Memo. at 3).  Benihana New York Corp. is a wholly-owned subsidiary of Benihana National Corp. and does not appear to be directly involved with the ownership or management of any of the Haru restaurants.  (Def. Memo. at 3).

Cards" webpage (May 10, 2010), attached as Exh. G to Pl. Reply).

The plaintiffs initiated this action on February 18, 2010, and filed a Second Amended Complaint on May 18, 2010. They allege that they are entitled to (1) unpaid overtime wages, (2) unpaid minimum wages, (3) reimbursement for expenses relating to their tools of the trade, (4) liquidated damages, and (5) attorneys' fees and costs, all arising out of the defendants' violations of the FLSA and NYLL. (Second Amended Complaint, ¶¶ 1, 2). The defendants filed a motion to dismiss the Second Amended Complaint on June 7, 2010, but withdrew it without prejudice on June 15, 2010. The plaintiffs filed the instant motion on August 9, 2010.

## Discussion

### A. Collective Action Certification

Under the FLSA, plaintiffs may elect to seek certification to proceed as a collective action, which allows other similarly-situated employees to opt-in to the litigation. See Iglesias-Mendoza v. LaBelle Farm, Inc., 239 F.R.D. 363, 367 (S.D.N.Y. 2007). Unlike under Rule 23 of the Federal Rules of Civil Procedure, the size of the putative class is not material to certifying a collective action under the FLSA -- "no showing of numerosity, typicality, commonality and representativeness need be made." Id. at 368 (quoting Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005)); see also Lee v. ABC Carpet & Home, 236 F.R.D.

193, 197 (S.D.N.Y. 2006) ("Even if the group of eligible plaintiffs is small, they all have a right to notice of these claims and an opportunity to join this action.") (internal quotation marks omitted).   Instead, the threshold question is whether the plaintiffs have shown that the proposed members of the collective action are "similarly situated."   29 U.S.C. § 216(b); see, e.g., Mendoza v. Casa de Cambio Delgado, Inc., No. 07 Civ. 2579, 2008 WL 938584, at *1 (S.D.N.Y. April 7, 2008); Realite v. Ark Restaurants Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998).   The term "similarly situated" is not defined by the FLSA or its implementing regulations.   Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997); accord Iglesias-Mendoza, 239 F.R.D. at 367. However, courts have determined that the applicable test is whether the plaintiffs have established a sufficient "factual nexus" between their situation and the situation of other putative collective action members.   See, e.g., Mentor v. Imperial Parking Systems, Inc., 246 F.R.D. 178, 181 (S.D.N.Y. 2007); Young, 229 F.R.D. at 54.

In making this showing, plaintiffs can rely on the pleadings, but only as supplemented by other evidence, such as affidavits from named plaintiffs, opt-in plaintiffs, or other putative collective action members.   See Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 321 (S.D.N.Y. 2007) ("[T]he appropriate inquiry . . .

is whether the putative class alleged by Plaintiffs is similarly situated based on the pleadings and any affidavits."); Prizmic v. Armour, Inc., No. 05 CV 2503, 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006) ("Mere allegations in the complaint are not sufficient [to meet the plaintiff's burden on a motion for collective action certification]; some factual showing by affidavit or otherwise must be made." (quoting Camper v. Home Quality Management Inc., 200 F.R.D. 516, 519 (D. Md. 2000)) (internal quotation marks omitted). Although the plaintiff need only make a "modest" showing that the putative collective action members are similarly situated, the evidence must be "sufficient to demonstrate that [current] and potential plaintiffs together were victims of a common policy or plan that violated the law." Realite, 7 F. Supp. 2d at 306; see, e.g., Sipas v. Sammy's Fishbox, Inc., No. 05 Civ. 10319, 2006 WL 1084556, at *2 (S.D.N.Y. April 24, 2006) (certifying collective action based on complaint and three supporting affidavits, each alleging that the named plaintiffs and approximately seventy-five others were employed in same position, wore same uniforms, attended same semi-annual meetings, reported to same supervisor, and were paid same wage); Masson v. Ecolab, Inc., No. 04 Civ. 4488, 2005 WL 2000133, at *14 (S.D.N.Y. Aug. 17, 2005) (certifying collective action for all "Route Managers" based on defendant's admission that it did not pay overtime to any Route Managers and affidavits of

7

three plaintiff Route Managers alleging that they each worked uncompensated overtime).  Furthermore, the plaintiff's supporting allegations must be specific, not conclusory.  <u>Morales v. Plantworks, Inc.</u>, No. 05 Civ. 2349, 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (citing 7B Charles Alan Wright et al., <u>Federal Practice and Procedure</u> § 1807 (3d ed. 1998)).

     1. <u>Minimum Wage</u>

The FLSA establishes a nationwide minimum wage for covered employees; at present, the rate is $7.25 per hour.  29 U.S.C. § 206.  Although states have the option of imposing a minimum wage in excess of the federal minimum, New York has not opted to do so.  N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.2(e).  However, New York has established its own superseding rules regarding base rates of pay for tipped employees.  Within the restaurant industry, there are two types of tipped employees.  "Food service workers" are employees who are "primarily engaged in the serving of food or beverages to guests, patrons or customers in the hotel or restaurant industries, including, but not limited to, wait staff, bartenders, captains and bussing personnel; and who regularly receive tips from such guests, patrons or customers."  § 137-3.4(a).  Such employees must receive a base pay rate of no less than $4.65 per hour, "provided that the tips of such worker[s], when added to such cash wage, are equal to or exceed $7.25 per

8

hour." § 137-1.5(e). "Service employees" include all other restaurant employees "who customarily receive[] tips at the rate of . . . $1.60 or more per hour." § 137-3.3(a)(4). Service employees "whose average of tips received is between $1.60 and $2.35 per hour" must be paid a base rate of at least $5.65 per hour; those "whose average of tips received is $2.35 or more per hour" can be paid a base rate of $4.90 per hour. § 137-1.4(a)(5). With respect to enforcement, both the FLSA and NYLL provide that employees who are not compensated in accordance with minimum wage requirements can bring civil suits against their employers for any unpaid wages, attorneys' fees and costs, and, in some instances, liquidated damages. 29 U.S.C. § 216(b); NYLL § 663(1).

Only one of the plaintiffs in the instant matter alleges that he is paid less than the minimum wage; in his declaration, Mr. Lin states that he is "paid a base salary of up to $4.90 per hour, which [is] less than minimum wage." (Lin Decl., ¶ 2). Mr. Lin additionally states that he has observed other employees being "paid a base salary which was less than minimum wage." (Lin Decl., ¶ 4). However, Mr. Lin's salary of $4.90 an hour is not necessarily in violation of New York's minimum wage laws. To the extent that he may qualify as a "food service worker," his base salary is $.35 in excess of the required base rate of pay provided he receives sufficient tips; if instead he is a "service employee,"

9

his base rate of pay only violates the law if he regularly receives less than $2.35 per hour in tips.  However, Mr. Lin has failed to make any statements regarding the amount of his tipped income. Although he makes a general allegation that Haru Too misreports the amount of his tips for tax purposes, he does not specify how much money he actually earns from tips on a regular basis.

Mr. Lin provides even less information about the other employees whom he states he has observed being paid a base salary below the minimum wage.  It is unclear who they are, what their base salary is, whether they are delivery persons or even tipped employees, or whether they work for Haru Too or another of the Haru Restaurants.  Mr. Lin's allegations are thus too conclusory to establish the requisite factual nexus with other members of the putative collective action.  The plaintiffs' failure to provide affidavits from any other employees who allege they were paid below the minimum wage, in combination with the fact that both Qi Li and Zeng Guan Li are paid in excess of the minimum wage, further undermines the plaintiffs' allegation that the Haru Restaurants have a common policy of violating minimum wage laws.  Because Mr. Lin has failed to adequately allege that he is similarly situated to other delivery persons at Haru Too or the Haru Restaurants with respect to his minimum wage claim, collective action certification with respect to that claim would be inappropriate.

10

2. <u>Overtime Pay</u>

Both the FLSA and NYLL require covered employers to pay their employees one and one-half times their regular rate of pay for any hours worked in excess of forty in a single workweek.  29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.3.  In his declaration, Qi Li states that during the period of his employment with the Haru restaurants, he worked "up to ten hours per day, five days a week" but "was not paid overtime at the rate of time-and-one-half for every hour [he] worked over forty hours in a workweek."   (Qi Li Decl., ¶¶ 3, 4).   However, neither Qi Li nor either of the other plaintiffs states in his declaration that he is aware of other employees at any of the Haru restaurants who have not been paid proper overtime wages.   The plaintiffs have thus failed to allege the requisite factual nexus between Qi Li's unpaid overtime claim and the treatment of other employees of Haru Too or the Haru restaurants.  <u>See</u> <u>Mendoza</u>, 2008 WL 938584, at *2 (finding that plaintiffs failed to allege sufficient factual nexus where numerous named plaintiffs submitted affidavits stating that they had worked uncompensated overtime but failed to make similar allegations regarding other putative class members); <u>Morales</u>, 2006 WL 278154, at *2 (denying collective action certification for unpaid overtime claim where "affidavit and exhibits [submitted by

11

plaintiffs]   contain   no   reference   to   any   [of   defendant's]
employee[s] other than plaintiffs, and they make no allegations of
a common policy or plan to deny plaintiffs overtime").   As a
result, the plaintiffs are not entitled to collective action
certification with respect to their unpaid overtime claim.

        3. Tools of the Trade

    Finally, the plaintiffs seek collective action certification
for their claim that the defendants violated the FLSA and NYLL by
failing to reimburse them for expenses related to the purchase and
maintenance both of their uniforms and of the vehicles they use to
make deliveries.   (Memorandum of Law in Support of Plaintiffs'
Motion for Conditional Collective Certification ("Pl. Memo.") at
4).

    The FLSA and NYLL allow employers to shift the cost of uniform
purchase and maintenance to employees as long as doing so does not
reduce the employee's wage below the minimum wage or lower the
amount of overtime pay due. 29 C.F.R. § 778.217 (reimbursement for
uniform costs not included in calculation of wage rate for purposes
of minimum wage compliance); N.Y. Comp. Codes R. & Regs. tit. 12,
§ 137-1.8 ("No allowance for the supply, maintenance, or laundering
of required uniforms shall be permitted as part of the minimum
wage."); Chan v. Triple 8 Palace, Inc., No. 03 Civ. 6048, 2006 WL
851749, at *22 & n.39 (S.D.N.Y. March 30, 2006) (rejecting

                            12

plaintiffs' argument that uniform expenses must always be reimbursed and holding that uniform costs are only reimbursable if they cause employees' wages to drop below minimum wage); Ayres v. 127 Restaurant Corp., 12 F. Supp. 2d 305, 310 (S.D.N.Y. 1998) ("Both New York law and federal law require employers to compensate employees for the purchase and maintenance of required uniforms if the employees' expenditures for these purposes would reduce their wages to below minimum wage."). Furthermore, New York law excludes from the definition of a uniform any "clothing that may be worn as part of an employee's ordinary wardrobe." N.Y. Comp. Codes R. & Regs. tit. 12, § 137-3.13; see also Hai Ming Lu v. Jing Fong Restaurant, Inc., 503 F. Supp. 2d 706, 712 (S.D.N.Y. 2007) (granting summary judgment for defendant employer on alleged violation of NYLL uniform provision where "items at issue . . . consist of 'white button-down shirts, black dress pants, black socks, and black leather shoes,' and therefore do not qualify as a 'uniform'").

Vehicles such as bicycles, motorcycles, and mopeds are considered "tools of the trade" if employees are required to possess and utilize them in the course of their employment. Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 257-58 (S.D.N.Y. 2008) (finding that plaintiff delivery persons' bicycles were tools of the trade because employer required all delivery persons to own

13

and maintain "vehicular transportation" as condition of their employment).   The rules governing for tools of the trade are similar to the rules governing uniforms: employers can require employees to bear the costs of acquiring and maintaining tools of the trade so long as those costs, when deducted from the employees' weekly wages, do not reduce their wage to below the required minimum.   29 C.F.R. § 531.35 ("[I]f it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the [FLSA] in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the [FLSA]."); N.Y. Comp. Codes R. & Regs. tit. 12, § 137-2.5(b) ("The minimum wage shall not be reduced by expenses incurred by an employee in carrying out duties assigned by his employer."); see also Yu G. Ke, 595 F. Supp. 2d at 258 ("[I]n measuring wages we take into account the costs that plaintiff[] [delivery persons] incurred in purchasing bicycles after they were hired and in repairing them during their employment by defendants.").

Here, all three plaintiffs have stated in their declarations that they were not reimbursed for "uniform expenses" or "for the purchase price, gas, repair, and maintenance" of the vehicles they

14

used for delivering food.    (Lin Decl., ¶ 3; Qi Li Decl., ¶ 5; Guan
Li Decl., ¶ 3).    They also state that they observed other employees
not being reimbursed for the same expenses.    (Lin Decl., ¶ 4; Qi Li
Decl., ¶ 6; Guan Li Decl., ¶ 4).    With respect to the scope of
their observations, Mr. Lin states that he observed "other
employees [who] did work that was the same or similar to the work
I did" not being reimbursed;    Qi Li observed "other delivery
persons working at other 'Haru' restaurants operated by Defendants
[who] also did work that was the same or similar to the work I did"
not being reimbursed; and Zeng Guan Li simply observed "that other
[sic] were not reimbursed."    (Lin Decl., ¶ 4; Qi Li Decl., ¶ 6;
Guan Li Decl., ¶ 4).

Plaintiffs have again failed to present their allegations with
sufficient specificity to satisfy even the modest requirements of
the collective action standard.    With respect to their uniform
reimbursement claim, the plaintiffs have failed to detail what
their "uniforms" are comprised of and, in particular, whether they
consist of ordinary wardrobe items -- such as black shirts and
pants -- or specially-made clothing items.    Equally critical,
plaintiffs have failed to state how much the purchase and
maintenance of their uniforms cost them or how these costs relate
to their weekly wage.    The plaintiffs' omissions are equally
problematic with respect to their tools of the trade claim: they do

15

not state the amount of money they expend on purchasing and maintaining their vehicles, nor do they state whether these costs infringe on their wages so as to reduce them below the minimum threshold.

The plaintiffs also provide no details regarding the "other employees" they have observed beyond the conclusory statements contained in their own declarations -- the names, wage rates, and tools of the trade expenditures of these employees are unknown, and the plaintiffs have failed to submit declarations from any non-plaintiffs stating the amount of their expenses or the impact of those expenses on their wages. Moreover, it is highly unlikely that such expenses would be uniform throughout the proposed plaintiff class; the plaintiffs themselves admit that they drove different types of vehicles that would almost certainly have required very different levels of maintenance. As a result of these inconsistencies, it would be inappropriate to speculate as to the expenses and resulting wage calculations of other employees of Haru Too or the Haru Restaurants. The plaintiffs have thus failed to demonstrate that they are similarly situated to other employees of Haru Too or the Haru Restaurants with respect to their tools of the trade claim and collective action certification on that claim should be denied.

16

B. Issuance of Notice

As part of their motion for collective action certification, the plaintiffs request that the Court approve and order the issuance of notice to all potential collective action members. Because certifying a collective action on any claim in this matter is unwarranted, the Court should not approve any form of notice at this time.

C. Production of Employee Information

The plaintiffs next request that the Court order the defendants to produce the "names, last known mailing addresses, alternate addresses, telephone numbers, Social Security numbers, and dates of employment of all [delivery persons] employed by Defendants" within the last three years. (Pl. Memo. at 5, 12-13).

Based on the broad remedial purposes of the FLSA, the Supreme Court has granted district courts broad discretion to authorize notice and discovery in FLSA actions. See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 172-73 (1989) (authorizing district court's involvement in issuance of notice in FLSA collective action so as to enforce statute's "broad remedial goal"); accord Lynch v. United Services Automobile Association, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007). Even where a plaintiff's motion to certify an FLSA collective action fails to assert facts sufficient to meet the § 216(b) threshold, courts in this district have often ordered the disclosure of contact information for potential opt-in plaintiffs

17

so that discovery into the collective allegations could continue and the plaintiffs could renew their motion for certification at a later date.   See Castro v. Spice Place, Inc., No. 07 Civ. 4657, 2009 WL 229952, at *3-5 (S.D.N.Y. Jan. 30, 2009) (denying FLSA collective action certification due to failure to demonstrate existence of a common policy or plan but granting leave to renew motion once further discovery had been completed); Mendoza, 2008 WL 938584, at *4 (denying certification under FLSA or NYLL but granting leave to refile after further discovery); Flores v. Osaka Health Spa, Inc., No. 05 Civ. 962, 2006 WL 695675, at *4 (S.D.N.Y. March 16, 2006) (denying certification under § 216(b) but ordering defendants to disclose names of all employees with plaintiff's job title during three-year period immediately preceding filing of action); Morales, 2006 WL 278154, at *3 (denying collective action certification but granting plaintiffs' motion for release of names and last known addresses of all defendants' employees from previous three years); 7B Charles Alan Wright et al., Federal Practice and Procedure § 1807 (3d ed. 1998). ("If conditional certification is denied, the court may allow discovery to provide plaintiffs a second opportunity to obtain sufficient evidence of a collective to warrant conditional certification and the notice to opt in.").

Here, the plaintiffs allege that the defendants have committed multiple violations of various provisions of the FLSA and NYLL with

18

respect not only to them but to multiple additional employees. Although the facts presented do not sufficiently demonstrate the existence of common policies on the part of the defendants such that collective action certification is warranted at this time, additional facts may emerge during discovery that further supplement the plaintiffs' class claims.   The Court should therefore deny the plaintiffs' motion for certification without prejudice to renewal at a later time and order the defendants to produce contact information for all delivery persons employed by Haru Too during the past three years.[3]

A question remains as to what contact information the Court should order the defendants to produce -- the plaintiffs have requested not only the names and addresses of potential plaintiffs, but also their telephone and social security numbers.   The defendants oppose this request on the grounds that it is overly broad and infringes on the privacy rights of their employees.

Courts in the Second Circuit have become progressively more

---

[3] It is also notable that, although the business card and website references the plaintiffs have produced fail to establish that the Haru Restaurants operate as a joint employer, depositions and other materials produced during discovery may prove this point and justify certification of a collective action as to delivery persons employed not only by Haru Too but also by some or all of the other Haru Restaurants.   However, expanding discovery beyond employees of Haru Too is inappropriate given the weakness of the plaintiffs' allegations and the privacy interests of employees at the other restaurants.

expansive regarding the extent of the employee information they will order defendants to produce in FLSA collective actions, even at the pre-certification stage.   Whitehorn v. Wolfgang's Steakhouse, Inc., No. 09 Civ. 1148, 2010 WL 2362981, at *3 (S.D.N.Y. June 14, 2010) (ordering production of putative class members' names, addresses, and last known telephone numbers to "facilitate the speedy collection of data so that Plaintiff may quickly move for conditional certification and potentially begin the opt-in process").   Generally, district courts have broad authority to manage discovery, Rengifo v. Erevos Enterprises, Inc., No. 06 Civ. 4266, 2007 WL 1834695, at *2 (S.D.N.Y. June 26, 2007) (citing Wills v. Amerada Hess Corp., 379 F.3d 32, 41 (2d Cir. 2004)); however, the disclosure of employee social security numbers raises obvious privacy concerns.  There is currently a split in the Southern District of New York with respect to the disclosure of putative FLSA collective action members' social security numbers. Compare  Spicer v. Pier Sixty LLC, No. 08 Civ. 10240, 2010 WL 3023037, at *11, 14 (S.D.N.Y. July 27, 2010) (granting FLSA collective action certification and ordering disclosure of potential opt-in plaintiffs' social security numbers), with Damassia v. Duane Reade, Inc., No. 04 Civ. 8819, 2006 WL 2853971, at *8 (S.D.N.Y. Oct. 5, 2006) (granting FLSA collective action certification and ordering issuance of notice but denying request

for production of putative collective action members' social security numbers as "unnecessary and inappropriate"). Some courts have struck a balance between these poles, allowing the production of social security numbers subject to specific conditions intended to increase employees' privacy, e.g., Shajan v. Barolo, Ltd., No. 10 Civ. 1385, 2010 WL 2218095, at *1 (S.D.N.Y. June 2, 2010) (requiring plaintiff to execute confidentiality order agreeing not show social security numbers to outside consultants, to utilize numbers only for skip traces on notices returned as undeliverable, and to destroy numbers once skip traces are completed), while others have refused to pro forma order the production of social security numbers, instead requiring the plaintiff to present a specific need for the information, e.g., Delaney v. Geisha NYC, LLC, 261 F.R.D. 55, 60 (S.D.N.Y. 2009) ("The Court does not see the need to direct the disclosure of social security numbers at this stage. If Plaintiffs find that a large number of notices are returned as undeliverable, the Court can consider the matter at that time.").

Here, plaintiffs' counsel has asserted a particular reason for requesting the production of potential plaintiffs' social security numbers: he states that, based on his own experience, restaurant industry employees can be chronically difficult to locate and thus the best, and often only, way to find them is through skip traces

21

based on their social security numbers.    (Pl. Memo. at 13;
Declaration of C.K. Lee dated Aug. 9, 2010, ¶ 2).  The defendants
respond that revealing this information would be unduly invasive of
their employees' privacy and have offered to provide plaintiffs'
counsel with the last four digits of the social security number of
any  employee  whose  court-ordered  opt-in  notice  is  returned
undeliverable from their last known address so that a skip trace
can be performed.    Because I do not recommend certifying a
collective action with respect to any of the plaintiffs' claims, it
would unnecessarily violate the privacy rights of Haru Too's
employees to order disclosure of any portion of their social
security numbers at this time.  I do recommend, however, that the
Court order Haru Too to produce the names, last known addresses,
and telephone numbers of all delivery persons they have employed
within the past three years.   If the plaintiffs have difficulty
finding sufficient persons to conduct discovery based on that
information, they can return to the court and seek disclosure of
further contact information.

## Conclusion

For  the  reasons  set  forth  above,  I  recommend  that  the
plaintiffs' motion for collective action certification and the
issuance of court-approved notice be denied and their motion for
the production of employee contact information be granted with

past three years.   Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72,

6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties

shall have fourteen (14) days from this date to file written

objections to this Report and Recommendation.   Such objections

shall be filed with the Clerk of the Court, with extra copies

delivered to the chambers of the Honorable Victor Marrero, Room

660, and to the chambers of the undersigned, Room 1960, 500 Pearl

Street, New York, New York 10007.   Failure to file timely

objections will preclude appellate review.

                    Respectfully submitted,


                    JAMES C. FRANCIS IV
                    UNITED STATES MAGISTRATE JUDGE


Dated:     New York, New York
           November 9, 2010


Copies mailed this date to:

C.K. Lee, Esq.
Robert L. Kraselnik, Esq.
Kraselnik & Lee, PLLC
30 East 39th Street, Second Floor
New York, New York 10018


Richard J. Schaeffer, Esq.
Adler C. Bernard, Esq.
Dornbush Schaeffer Strongin & Venaglia, LLP
747 Third Avenue
New York, New York 10017

23

Richard J. Schaeffer, Esq.
Adler C. Bernard, Esq.
Dornbush Schaeffer Strongin & Venaglia, LLP
747 Third Avenue
New York, New York 10017