```
UNITED STATES DISTRICT COURT              (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
GUAN MING LIN, QI LI and ZENG      : 10 Civ. 1335 (VM) (JCF)
GUAN LI, on behalf of themselves   :
and others similarly situated,     :      REPORT AND
                                   :      RECOMMENDATION
              Plaintiffs,          :
                                   :
      - against -                  :
                                   :
BENIHANA NATIONAL CORP., BENIHANA  :
NEW YORK CORP., HARU HOLDING CORP.,:
HARU AMSTERDAM AVENUE CORP., HARU  :
GRAMERCY PARK CORP., HARU THIRD    :
AVENUE CORP., HARU TOO, INC., HARU :
WALL STREET CORP., JOEL SCHWARTZ,  :
and BENIHANA INC.,                 :
                                   :
              Defendants.          :
- - - - - - - - - - - - - - - - - -:
```

TO THE HONORABLE VICTOR MARRERO, U.S.D.J:

The plaintiffs bring this class and collective action pursuant to the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 et seq., and New York Labor Law ("NYLL") seeking compensation for wage violations allegedly committed by the defendants, their employers. The plaintiffs now move for (1) certification of a collective action pursuant to 29 U.S.C. § 216(b); (2) certification of a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure; (3) issuance of notice to potential class and collective action members and permission to post such notice on the defendants' premises; and (4) disclosure of the job titles, contact information, social security numbers, and dates of employment of

1

all class or collective action members. For the reasons that follow, I recommend that the plaintiffs' motion be granted in part and denied in part.

## Background

Much of the background to this motion was laid out in my prior Report and Recommendation, dated November 9, 2010, and will only be summarized briefly here. Guan Ming Lin v. Benihana National Corp., ___ F. Supp. 2d ___, ___, No. 10 Civ. 1335, 2010 WL 5129013, at *2-3 (S.D.N.Y. Dec. 15, 2010). The plaintiffs filed the complaint in this action on February 8, 2010, alleging that the defendants, owners and operators of a chain of Japanese restaurants in New York City ("the Haru restaurants"), have failed to properly compensate them in violation of the FLSA and NYLL. On August 9, 2010, the plaintiffs filed a motion seeking collective action certification for claims that: (1) the defendants failed to pay them proper overtime wages, (2) the defendants failed to pay them statutory minimum wages, and (3) the defendants failed to reimburse them for expenses relating to their tools of the trade. (Memorandum of Law in Support of Plaintiffs' Motion for Conditional Collective Certification dated Aug. 9, 2010 at 4). Certification was denied without prejudice by the Honorable Victor Marrero, U.S.D.J., on December 15, 2010. Guan Ming Lin, 2010 WL 5129013, at *1. However, Judge Marrero simultaneously ordered the defendants to

produce the names, last known addresses, and telephone numbers of all delivery persons employed by defendant Haru Too, Inc. within the past three years.  Id. at *1, *10.  Following further discovery, the plaintiffs filed this motion on January 5, 2011.

Discussion

### A. Sufficiency of the Pleadings

The plaintiffs seek to certify class and collective actions with respect to the substantive claims that: (1) the defendants improperly deducted a tip credit from the plaintiffs' wages in violation of 29 U.S.C. §§ 203(m) and 211, NYLL § 652(4), and N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12, §§ 146-1.3, -2.1(a)(9), -2.2, and -2.3; (2) the defendants improperly deducted a meal credit from the plaintiffs' wages in violation of 29 U.S.C. § 203(m) and 12 NYCRR §§ 146-1.9, -2.3, and -3.7; (3) the defendants failed to pay the plaintiffs spread-of-hours wages in violation of 12 NYCRR § 146-1.6; and (4) the defendants failed to pay the plaintiffs for all of the hours they worked in violation of 29 U.S.C. §§ 206(a) and 207(a), and 12 NYCRR §§ 146-1.2 and -1.4. (Memorandum of Law in Support of Plaintiff's Motion for Conditional Collective Certification dated Jan. 5, 2011 ("Pl. Memo.") at 8-18). The defendants argue that certification of any of these claims would be inappropriate; they maintain that the claims were insufficiently pled pursuant to Rule 8(a)(2) of the Federal Rules

of Civil Procedure and that, as a result, they did not have notice and would be prejudiced by having to defend against them at this stage of the litigation. (Memorandum of Law in Support of Defendants' Opposition to Plaintiffs' Motion for Conditional Collective Certification ("Def. Opp. Memo.") at 11-13).

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading must be sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "'Although a complaint need not correctly plead every legal theory supporting the claim, at the very least, plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense.'" Lennon v. Nokia, Inc., No. 07 Civ. 343, 2009 WL 773309, at *9 n.11 (S.D.N.Y. March 24, 2009) (quoting Beckman v. United States Postal Service, 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000)); see also McEachin v. McGuinnis, 357 F.3d 197, 199 n.2 (2d Cir. 2004) ("It is well-established that the failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters." (internal quotation

marks omitted)).

The defendants have challenged all four of the claims now asserted by the plaintiffs on the ground that they are insufficiently pled; I will address each in turn.

### 1. Tip Credit

Both the FLSA and NYLL allow employers to pay tipped restaurant employees a cash wage less than the statutory minimum if the employees receive gratuities sufficient to compensate for the difference. 29 U.S.C. § 203(m); NYLL § 652(4). For restaurant workers in New York, an employer can claim a tip credit and thus pay the employee a cash wage as low as $5.00 per hour "provided that the total of tips received plus the wages equals or exceeds $7.25 per hour." 12 NYCRR § 146-1.3. In support of their motion for certification, the plaintiffs allege that the defendants violated the tip credit regulations by failing to (1) give their employees proper notice of the credit as required by 29 U.S.C. § 203(m) and 12 NYCRR §§ 146-1.3 and -2.2; (2) keep adequate records of the amount of tips received by their employees as required by 29 U.S.C. § 211 and 12 NYCRR § 146-2.1(a)(9); and (3) provide their employees with wage statements specifying the amount of tip credit deducted from their wages as required by 29 U.S.C. § 203(m) and 12 NYCRR § 146-2.3. (Pl. Memo. at 8-14).

The defendants contend that the plaintiffs failed to plead any

tip credit-related claims in their Second Amended Complaint. (Def. Opp. Memo. at 13). Although the plaintiffs did not explicitly refer to the defendants' tip credit practices in the Second Amended Complaint, they did allege that the defendants maintained "a policy of not paying either the FLSA minimum wage or the New York State minimum wage." (Second Amended Complaint ("2d Am. Compl."), ¶ 32). They also referred repeatedly and broadly to the defendants' alleged minimum wage violations. (2d Am. Compl., ¶¶ 46, 50, 58). Because the gravamen of a tip credit violation is that the employee's wage fell below the statutory minimum as a result of the employer's unlawful taking of the tip credit, the Second Amended Complaint was sufficient to put the defendants on notice of the plaintiffs' tip credit claims.

### 2. Meal Credit

Under federal and New York law, an employer can deduct money from an employee's wage in exchange for meals it provides to the employee. 29 U.S.C. § 203(m); 12 NYCRR § 146-1.9. Federal regulations prohibit an employer from deducting more than the actual cost of the meal from the employee's paycheck, 29 C.F.R. § 531.3(a), and New York law caps the meal credit at "no more than $2.50 per meal," regardless of actual cost, 12 NYCRR § 146-1.9. New York law further requires all employer-provided meals to consist of "adequate portions of a variety of wholesome, nutritious

foods." 12 NYCRR § 416-3.7. As a prerequisite to taking a meal credit, the employer must state on the employee's pay stub the amount of the meal credit. 12 NYCRR § 416-2.3.

The plaintiffs allege that the defendants (1) did not provide employees with notice of the amount of money deducted from their wages as a meal credit, (2) did not keep proper records of the actual cost of the meals, and (3) did not provide sufficiently nutritious meals in exchange for the meal credit. (Pl. Memo. at 16-17). The defendants argue that these claims were not included in the pleadings and thus are inappropriately raised here. (Def. Opp. Memo. at 13). They are correct. Nowhere in the Second Amended Complaint did the plaintiffs refer to meal credits taken by the defendants or the quality of the meals provided. The propriety of the defendants' alleged decision to deduct a meal credit from the plaintiffs' pay checks is not related to the issues raised in the Second Amended Complaint -- whether the plaintiffs were paid minimum wage and overtime pay, and whether they were compensated for monies spent on their tools of the trade. Therefore, the plaintiffs have not adequately pled their meal credit claim.[1]

---

[1] Were this claim to have been adequately pled, I note that it appears ripe for certification. Nevertheless, the defendants have cast significant doubt on its merit by showing that, in fact, they did not deduct a meal credit from plaintiff Guan Ming Lin's pay check and instead provided his meals free of charge. (Affidavit of Sharon Rose dated Feb. 8, 2011 ("Rose Aff."), ¶¶ 3-7; Pay stubs of

### 3. Spread of Hours

New York law entitles hourly restaurant workers to receive an extra hour's worth of pay at their "basic minimum hourly rate" of pay for each workday that stretches over a period of at least ten hours, including breaks. 12 NYCRR § 146-1.6. This wage bonus, known as spread-of-hours pay, must be recorded by the employer and noted on the employee's pay stub. 12 NYCRR §§ 146-2.1(a)(4), -2.3.

Spread-of-hours claims are distinct from minimum wage, overtime, and other wage-related violations and are therefore pled separately. See, e.g., First Amended Complaint at 14, Romero v. Flaum Appetizing Corp., No. 07 Civ. 7222 (S.D.N.Y. March 7, 2011); First Amended Complaint at 20-21, Olvera v. New Ko-Sushi, No. 10 Civ. 4643, 2011 WL 724699 (S.D.N.Y. Feb. 16, 2011); Complaint at 6, Lanzetta v. Florios Enterprises, Inc., No. 08 Civ. 6181, 2011 WL 253961 (S.D.N.Y. Jan. 25, 2011); First Amended Class Action Complaint at 20, Reyes v. Altamarea Group, LLC, No. 10 Civ. 6451, 2011 WL 280799 (S.D.N.Y. Jan. 18, 2011); Supplemental Complaint at 6, Lemus v. Manhattan Car Wash, Inc., No. 06 Civ. 15486, 2010 WL 5094412 (S.D.N.Y. Dec. 9, 2010); Second Amended Complaint at 14, Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317 (S.D.N.Y. 2007) (No. 07 Civ. 319). The plaintiffs made no reference to

---

Guan M. Lin, attached as Exh. A to Rose Aff.).

spread-of-hours violations in their Second Amended Complaint -- by statute or by fact -- thereby depriving the defendants of any notice that this claim would be raised in the present certification motion. They have therefore failed to meet the requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure.

### 4. Off-the-Clock Work

Both federal and New York wage laws require employers to pay hourly employees for all of their hours worked; thus, employers are prohibited from requiring employees to perform uncompensated, or "off-the-clock," work. See 29 U.S.C. §§ 206(a), 207(a); 12 NYCRR §§ 146-1.2, -1.4; Zivali v. AT & T Mobility LLC, 646 F. Supp. 2d 658, 660 (S.D.N.Y. 2009) (certifying FLSA collective action where employer "systematically failed to fully account for the hours worked by non-exempt employees, effectively forcing them to work 'off the clock' and thus without due compensation").

In their Second Amended Complaint, the plaintiffs repeatedly allege that the defendants failed to pay them full minimum and overtime wages. (2d Am. Compl., ¶¶ 1-2, 26-27, 32, 35, 46-47, 58, 60). Although they do not specifically state that they were denied these wages as a result of off-the-clock work, their pleadings were sufficient to put the defendants on notice of the plaintiffs' claim that they were not compensated for all of their hours worked.

## B. Certification

With respect to their two remaining claims, the plaintiffs have moved for certification of collective and class actions pursuant to 29 U.S.C. § 216(b) and Rule 23(b)(3) of the Federal Rules of Civil Procedure. (Pl. Memo. at 7-8, 37). They propose to include three categories of the Haru restaurants' employees in a single class: (1) employees paid partly through tips, (2) employees paid the minimum wage, and (3) employees "improperly assessed a meal credit." (Pl. Memo. at 7-8). As a result of the recommendations above, this definition is now over-inclusive in that it contains individuals whose claims are not eligible for certification. This flaw is not fatal, however. Courts performing the collective action certification inquiry have discretion to certify a different group of individuals than that sought by the plaintiff. See Lujan v. Cabana Management, Inc., No. 10 CV 755, 2011 WL 317984, at *4, 7 (E.D.N.Y. Feb. 1, 2011) (certifying FLSA collective action with respect to defendants' three New York City locations but declining to include employees of two Florida locations); Green v. Plantation of Louisiana, LLC, Civ. No. 2:10-0364, 2010 WL 5256354, at *6-12 (W.D. La. Nov. 24, 2010) (declining to certify plaintiffs' proposed class of exotic dancers, waitresses, shot girls, door girls, bar tenders, and bouncers but sua sponte certifying collective action of exotic dancers only),

report and recommendation adopted, 2010 WL 5256348 (W.D. La. Dec. 15, 2010). Similarly, district courts have "substantial discretion" when performing the Rule 23 analysis to "'alter or modify the class [or] create subclasses.'" Shabazz v. Morgan Funding Corp., 269 F.R.D. 245, 249 (S.D.N.Y. 2010) (quoting In re Sumitomo Copper Litigation, 262 F.3d 134, 139 (2d Cir. 2001)); see also Fed. R. Civ. P. 23(c). I will therefore address the appropriateness of certifying class and collective actions comprised of individuals affected by the plaintiffs' remaining claims -- specifically, all employees of the Haru restaurants who were (1) paid partly in tips or (2) not compensated for all of their hours worked.

### 1. Collective Action

Certification under the FLSA is appropriate where the plaintiffs have shown that the proposed members of the collective action are "similarly situated." 29 U.S.C. § 216(b); see, e.g., Mendoza v. Casa de Cambio Delgado, Inc., No. 07 Civ. 2579, 2008 WL 938584, at *1 (S.D.N.Y. April 7, 2008). The term "similarly situated" is not defined by the FLSA or its implementing regulations. Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997); accord Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 367 (S.D.N.Y. 2007). However, courts have determined that the applicable test is whether the plaintiffs have

established a sufficient "factual nexus" between their situation and the situation of other putative collective action members. See, e.g., Mentor v. Imperial Parking Systems, Inc., 246 F.R.D. 178, 181 (S.D.N.Y. 2007); Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005).

Although the plaintiff need only make a "modest" showing that the putative collective action members are similarly situated, the evidence must be "sufficient to demonstrate that [current] and potential plaintiffs together were victims of a common policy or plan that violated the law." Realite v. Ark Restaurants Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998). The plaintiff need not show that all proposed collective action members held identical jobs or were subject to identical treatment; rather, certification is appropriate "where all putative class members are employees of the same [] enterprise and allege the same types of FLSA violations." Fasanelli, 516 F. Supp. 2d at 322; see also Williams v. Twenty Ones, Inc., No. 07 Civ. 3978, 2008 WL 2690734, at *1-2 (S.D.N.Y. June 30, 2008) (certifying FLSA collective action of defendant-employer's "office workers, waiters, bartenders, runners, and bussers" where no single FLSA violation affected every collective action member but each member was affected by at least one alleged violation). In making this showing, plaintiffs can rely on the pleadings, but only as supplemented by other evidence, such as

affidavits from named plaintiffs, opt-in plaintiffs, or other putative collective action members. See Fasanelli, 516 F. Supp. 2d at 321 ("[T]he appropriate inquiry . . . is whether the putative class alleged by Plaintiffs is similarly situated based on the pleadings and any affidavits."); Prizmic v. Armour, Inc., No. 05 CV 2503, 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006) ("'[M]ere allegations in the complaint are not sufficient [to meet the standard for collective action certification]; some factual showing by affidavit or otherwise must be made.'" (quoting Camper v. Home Quality Management Inc., 200 F.R.D. 516, 519 (D. Md. 2000).

### a. Tip Credit

The plaintiffs allege that the defendants' tip credit practices were improper and, as a result, that the defendants were not entitled to deduct a tip credit from the plaintiffs' wages. In particular, they claim that the defendants (1) gave employees inadequate notice of the fact that they were taking a tip credit, (2) failed to keep records of the amount of tipped income earned by employees, and (3) provided employees with faulty wage statements that did not specify the amount of tip credit deducted from their wages. (Pl. Memo. at 9-14). These alleged practices violate both the FLSA and NYLL. 29 U.S.C. §§ 203(m), 211; NYLL § 652(4); 12 NYCRR §§ 146-1.3, -2.1(a)(9), -2.2, -2.3. As a result, the plaintiffs seek to certify a collective action that includes all

tipped employees of the Haru restaurants.

In support of their application, the plaintiffs have provided the sworn declarations of four employees -- one from Haru Sake Bar[2] and three from Haru Third Avenue[3] -- each of whom states that he was not sufficiently informed of the nature or amount of the tip credit deducted from his wages and that he is aware of other employees who were similarly uninformed. (Declaration of Guan Ming Lin dated June 7, 2010 ("Lin 6/7/10 Decl."), ¶ 1; Declaration of Guan Ming Lin dated Dec. 30, 2010 ("Lin 12/30/10 Decl."), ¶ 2; Declaration of Hong Jun Zhang dated Feb. 23, 2011 ("Zhang Decl."), ¶¶ 1, 6; Declaration of Ling Ping Yang dated Feb. 23, 2011 ("Yang Decl."), ¶¶ 1, 6; Declaration of Koon Ho Kwan dated Feb. 24, 2011 ("Kwan Decl."), ¶¶ 1, 4). Each declarant has also claimed that he was "never informed [of] the amount of tip credit taken with respect to any payment period during the period of [his] employment" and that he is aware of other employees who were similarly uninformed. (Lin 12/30/10 Decl., ¶ 3; Zhang Decl., ¶ 7; Yang Decl. ¶ 7; Kwan Decl. ¶ 5).

Both parties have separately produced two "Acknowledgment of

_____

[2] Haru Sake Bar is owned and operated by defendant Haru Too, Inc. (Defendants' Memorandum of Law in Support of Motion to Dismiss ("Def. Memo.") at 3).

[3] Haru Third Avenue is owned and operated by defendant Haru Third Avenue Corp. (Def. Memo. at 3).

Tip Credit" forms signed by Mr. Lin, each of which describes the statutory basis for the tip credit and its effect on an employee's wages. (Employee Acknowledgment of Tip Credit Forms dated July 20, 2004 and June 24, 2006, attached as Exh. C to Pl. Memo. and Exh. B to Declaration of Richard Schaeffer dated Feb. 9, 2011 ("Schaeffer Decl.")). Mr. Lin acknowledges signing these forms but claims that he did not understand their import because he does not read or speak English and nobody explained the contents to him in a language he understood. (Lin 12/30/10 Decl., ¶ 2; Deposition of Guan Ming Lin ("Lin Dep."), attached as App. B to Pl. Memo., at 32-33, 73-80). The defendants have additionally produced two "Report of Tips" forms indicating that Mr. Lin was paid $419.00 in tips for the period December 17, 2006 through December 30, 2006 and $579.95 in tips for the period December 31, 2006 through January 13, 2007. (Employee's Report of Tips to Employer forms dated Dec. 30, 2006 and Jan. 13, 2007, attached as Exh. D to Schaeffer Decl.). Mr. Lin counters that he did not fill out these forms and never received the stated amounts of money. (Lin Dep. at 52-53). Finally, the parties have produced four of Mr. Lin's pay stubs, each of which has the following sentence printed across the top: "IF YOU ARE PAID LESS THAN THE STATE OR FEDERAL MINIMUM WAGE, THE TIP CREDIT APPLICABLE IN YOUR STATE IS TAKEN." (Pay stubs of Guan M. Lin dated Jan. 4, 2007 and Jan. 8, 2007, attached as Exh. A to

Schaeffer Decl., and Pay stubs of Guan M. Lin dated Aug. 6, 2009 and Aug. 20, 2009, attached as part of Exh. D to Pl. Memo. (collectively, "Lin Pay Stubs")). Each pay stub contains a line item specifying Mr. Lin's "tip earnings" for both the two-week period of the pay stub and the calendar year leading up to the closing date of that pay stub. (Lin Pay Stubs).

The plaintiffs have proffered sufficient evidence of the defendants' tip credit practices to warrant collective action certification. In particular, they have shown that the defendants maintain a number of uniform tip credit policies at all of the Haru restaurants. For example, the parties agree that all tipped employees of the Haru restaurants were given notice of the applicable tip credit regulations in English -- via informational posters placed in the Haru restaurants, the tip credit acknowledgment forms signed by the employees, and the statement printed on their pay stubs. (Deposition of Seth Rose ("Rose Dep."), attached as App. A to Pl. Memo., at 114-15, 150; Pl. Memo. at 10-11; Def. Opp. Memo. at 20-21). However, the plaintiffs maintain that a majority of the Haru restaurants' tipped employees are not proficient in English and notice provided in English alone was therefore insufficient. (Pl. Memo. at 11); 12 NYCRR § 146-2.2(a); see Chan v. Sung Yue Tung Corp., No. 03 Civ. 6048, 2007 WL 313483, at *8, 19 (S.D.N.Y. Feb. 1, 2007) (finding violation of New

16

York's tip credit regulations where informational posters "were in English, not Chinese, a language which is not understood well by any of the plaintiffs"). Five out of the six declarants state that they do not speak or read English, and three of them claim to have been unaware of the defendants' tip credit practices specifically because of their lack of proficiency in English. (Lin 12/30/10 Decl., ¶ 2; Zhang Decl., ¶ 6; Yang Decl., ¶ 6; Declaration of Qi Li dated Jan. 3, 2011 ("Qi Li 1/3/11 Decl."), ¶ 2; Declaration of Zeng Guan Li dated Jan. 3, 2011 ("Zeng Guan Li 1/3/11 Decl."), ¶ 2). These declarants further state that they know of other tipped employees who were also unaware of the defendants' tip credit policies due to their limited fluency in English; they have thus alleged the requisite factual nexus between their claims and the claims of putative collective action members. (Lin. 12/30/10 Decl., ¶ 2; Zhang Decl., ¶ 6; Yang Decl., ¶ 6).

The plaintiffs have also shown that the defendants maintained a uniform system for recording the amount of their tipped income. They argue that this system is flawed because it relies on the Report of Tips forms completed by the employees, who sometimes fill them out improperly due to their limited English proficiency. (Pl. Memo. at 13). The defendants do not dispute that some of the forms appear to be filled out incorrectly; they further acknowledge that they use the same tip reporting policy at all of the Haru restaurants. (Rose Dep. at 181-85; Def. Opp. Memo. at 21). The

defendants also admit that all employees of the Haru restaurants from whose wages they deducted a tip credit receive identically-formatted pay stubs that do not specify the amount of tip credit deducted for that pay period. (Rose Dep. at 205-07). They argue that they are nevertheless in compliance with applicable tip credit regulations by virtue of the posters they place in their restaurants, the sentence printed at the top of each employee's pay stub, and their use of employee tip reporting forms. (Def. Opp. Memo at 21; Rose Dep. at 206-07). But this argument goes to the merits of the plaintiffs' claim, not the propriety of certification. Because the defendants do not dispute that the challenged tip credit policies are in effect at all of their locations, the plaintiffs are entitled to collective action certification of all tipped employees of the Haru restaurants.

### b. Off-the-Clock Work

The plaintiffs are also entitled to collective action certification of their off-the-clock work claim. They argue that the defendants violated federal and New York minimum wage and overtime laws by requiring them to perform off-the-clock work in violation of 29 U.S.C. §§ 206(a) and 207(a), and 12 NYCRR §§ 146-1.2 and -1.4. Specifically, they allege that delivery persons at the Haru restaurants were required to clock out of the defendants' electronic time-keeping system before making their last delivery of the day, thus falsifying their timecards and depriving them of

wages for the time they spent making those deliveries. (Pl. Memo.
at 18). The plaintiffs support their claim with the declarations
of five current and former delivery persons employed by three of
the Haru restaurants -- Haru Sake Bar, Haru Third Avenue, and Haru
Amsterdam[4] -- each of whom states that he was regularly asked to
clock out before making his last delivery and observed other
delivery persons being asked to do the same. (Lin 12/30/10 Decl.,
¶ 7; Lin 6/7/10 Decl., ¶ 1; Qi Li 1/3/11 Decl., ¶ 5; Declaration of
Qi Li Dated July 13, 2010 ("Qi Li 7/13/10 Decl."), ¶ 1; Zeng Guan
Li 1/3/11 Decl., ¶ 5; Declaration of Zeng Guan Li dated June 7,
2010 ("Zeng Guan Li 6/7/10 Decl."), ¶ 1; Zhang Decl., ¶ 9; Yang
Decl., ¶ 9). Mr. Lin's deposition testimony describes the same
pattern of violations. (Lin Dep. at 123-25).

The defendants argue that the plaintiffs have not provided a
sufficient factual basis for their allegations and that, even if
they had, their claim is too individualized to be amenable to
classwide adjudication. (Def. Opp. Memo. at 25-27). However,
allegations of mandatory off-the-clock work are regularly certified
as collective actions in this district. See, e.g., Zivali, 646 F.
Supp. 2d at 661-62 (certifying collective action with respect to
plaintiffs' claims of off-the-clock work); Fasanelli, 516 F. Supp.
2d at 320-22 (same); Torres v. Gristede's Operating Corp., No. 04

_____

    [4] Haru Amsterdam is owned and operated by defendant Haru
Amsterdam Avenue Corp. (Def. Memo. at 3).

Civ. 3316, 2006 WL 2819730, at *9-17 (S.D.N.Y. Sept. 29, 2006) (certifying class and collective actions with respect to plaintiffs' claims of off-the-clock work). Furthermore, the plaintiffs have stated sufficient facts to warrant certification pursuant to 29 U.S.C. § 216(b). The declarations and deposition testimony they have submitted support their allegations of being required to work off-the-clock time and also establish the requisite factual nexus between their experiences and those of other putative collective action members.

However, I note that the plaintiffs' submissions do not on their own provide sufficient justification for collective action certification beyond delivery persons who worked at Haru Sake Bar, Haru Third Avenue, or Haru Amsterdam. Those declarations alleging off-the-clock work come exclusively from delivery persons employed by those three restaurants, and the only employee of Haru Amsterdam appears to have focused his submission on Haru Sake Bar, where he was employed more recently and for a longer period of time. (Zhang Decl., ¶ 1; Yang Decl., ¶ 1; Lin 6/7/10 Decl., ¶ 1; Qi Li 7/13/10 Decl., ¶ 1; Zeng Guan Li 6/7/10 Decl., ¶ 1). Although two of the declarants conclusorily state that clocking out before their last delivery of the day was "the common practice among delivery persons of all Haru restaurants," they do not elaborate on the origin or operation of this practice or explain the basis for their knowledge

of it.  (Zhang Aff., ¶ 9; Yang Aff., ¶ 9).  And, perhaps unsurprisingly, the defendants have not admitted to having an "off-the-clock" policy in place at all of their restaurants.  The plaintiffs' declarations also do not provide any facts regarding off-the-clock work performed by other categories of employees.  Because I recommend certification of a collective action including all tipped employees of the Haru restaurants, however, delivery persons will already be receiving collective action notice, and it would be unnecessarily complex and burdensome for the parties to provide different notice to various classes of employees at different Haru locations.  Therefore, although the plaintiffs have not provided sufficient affidavits or other evidence to justify collective action certification of their off-the-clock work claim beyond those delivery persons employed by Haru Sake Bar, Haru Third Avenue, and Haru Amsterdam, I recommend including this claim in the notice distributed to all tipped employees of the Haru restaurants.

### 2. Class Action

Rule 23 of the Federal Rules of Civil Procedure governs the certification of class actions in federal courts.  Its requirements are more stringent than those of the FLSA, see Iglesias-Mendoza, 239 F.R.D. at 368 ("The 'similarly situated' standard for certifying a [collective] action is [] considerably more liberal than class certification under Rule 23."); nevertheless, courts in

the Second Circuit "apply a liberal, rather than restrictive, interpretation to Rule 23," Lee v. ABC Carpet & Home, 236 F.R.D. 193, 202 (S.D.N.Y. 2006). Section (a) of Rule 23 of the Federal Rules of Civil Procedure establishes four prerequisites for maintenance of a class action:

> (1) the class is so numerous that joinder of all members is impracticable,
>
> (2) there are questions of law or fact common to the class,
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition, to certify a damages class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, the plaintiff must show "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The plaintiffs bear the burden of establishing each of these elements by a preponderance of the evidence. Teamsters Local 445 Freight Division Pension Fund v. Bombardier Inc., 546 F.3d 196, 202-03 (2d Cir. 2008).

Numerosity is presumed when the proposed class contains forty or more members. See In re Amaranth Natural Gas Commodities

Litigation, 269 F.R.D. 366, 375-76 (S.D.N.Y. 2010) (citing Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995)). The proposed class here meets this threshold. The defendants identify five categories of tipped employees: delivery persons, wait staff, busboys, bartenders, and food runners. (Rose Dep. at 109, 262-63). They acknowledge employing forty-five delivery persons at their seven New York City restaurants, along with thirty busboys, sixty-five wait staff, and an unknown additional number of bartenders and food runners at all nine of their restaurants. (Rose Dep. at 95, 108-09). These figures do not include additional individuals who worked for the defendants within the applicable six year statute of limitations period but are no longer employed by them. Although incomplete, these numbers indicate that the proposed class has sufficient members to fulfill the numerosity requirement.

However, the plaintiffs cannot show commonality. Commonality is "satisfied if the class shares even one common question of law or fact, and factual differences in the claims of the class do not preclude a finding of commonality." In re NTL, Inc. Securities Litigation, No. 02 Civ. 3013, 2006 WL 330113, at *6 (S.D.N.Y. Feb. 14, 2006) (internal quotation marks omitted), report and recommendation adopted, 2006 WL 568225 (S.D.N.Y. March 9, 2006). As currently constituted, there is no single question of fact or

law applicable to every member of the proposed class.  Although all delivery persons at the Haru restaurants are paid partly in tips, not every delivery person has a tip credit deducted from his wages. (Rose Dep. at 109-11).  Of the five declarants who have worked as delivery persons, only three earned a cash wage that was less than the statutory minimum.  (Lin 6/7/10 Decl., ¶ 2; Qi Li 7/13/10 Decl., ¶ 2; Zeng Guan Li 6/7/10 Decl., ¶ 2; Zhang Decl., ¶ 2; Yang Decl., ¶ 2).  And, as noted above, while the plaintiffs have provided evidence that delivery persons were forced to work off-the-clock time for which they were not compensated, they have not made a similar showing for any other category of employee. Therefore, the proposed class shares neither questions related to the defendants' tip credit practices nor questions related to their time keeping practices, and thus the commonality requirement has not been met.

Even if the proposed class were narrowed to a subclass comprised solely of those employees from whose wages the defendants deducted a tip credit, the certification inquiry runs aground at the predominance requirement.  Predominance asks "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997).  In making this determination, courts "'focus on the liability issue . . . and if the liability issue is common to the

class, common questions are held to predominate over individual questions.'" <u>Bolanos v. Norwegian Cruise Lines Ltd.</u>, 212 F.R.D. 144, 148 (S.D.N.Y. 2002) (quoting <u>Dura-Bilt Corp. v. Chase Manhattan Corp.</u>, 89 F.R.D. 87, 93 (S.D.N.Y. 1981)). Here, the plaintiffs allege that the defendants (1) failed to provide notice of their tip credit practices in any language other than English and (2) maintained inaccurate records of the amount of tipped income earned by the plaintiffs because the forms on which the plaintiffs reported their tips were only provided in English and thus were incorrectly completed by those employees not proficient in English. (Pl. Memo. at 9-11, 13). Because the defendants' liability depends on whether their employees understood the English-language notices and forms they provided, the liability determination would only be common to the entire subclass if all of its members shared the same level of English-language proficiency. In fact, these individuals vary in their comprehension of English. None of the five declarants who are or have been employed by the Haru restaurants as delivery persons can speak or read English, but wait staff and bartenders are required to speak English. (Lin 12/30/10 Decl., ¶ 2; Qi Li 1/3/11 Decl., ¶ 2; Zeng Guan Li 1/3/11 Decl., ¶ 2; Zhang Decl., ¶ 6; Yang Decl., ¶ 6; Rose Dep. at 135). The plaintiffs have therefore failed to show that the liability determination is so unified as to predominate over individual

questions of fact. As a result, certification of this subclass pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure would be inappropriate.

Certification of a subclass of employees who were allegedly required to perform uncompensated, off-the-clock work would also be inappropriate because, in the first instance, such a subclass fails to meet the numerosity requirement. As discussed above, the plaintiffs have provided evidence that a small group of delivery persons was subjected to this treatment. Although neither party specifies the exact number of delivery persons who work at Haru Sake Bar, Haru Third Avenue, or Haru Amsterdam, the defendants acknowledge that they employ approximately forty-five delivery persons total at all seven of their New York City restaurants. (Rose Dep. at 95). Assuming an approximately equivalent number of delivery persons works at each restaurant, there are roughly eighteen delivery persons currently employed by these three restaurants. Even given some amount of turnover during the six-year statute of limitations period, the plaintiffs have failed to show that such a subclass would be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Therefore, certification of this subclass would not be appropriate.

D. Collective Action Notice

The plaintiffs have submitted a proposed notice informing

collective action members of their rights and ask that the Court order its distribution. (Proposed Notice to Class Members, attached as Exh. A to Declaration of C.K. Lee dated Jan. 5, 2011; Pl. Memo. at 8). The defendants characterize the plaintiff's proposed notice as "overbroad" and request the opportunity to submit their own counter-proposal. (Def. Opp. Memo. at 27-28 n.5). In light of the recommendations contained in this Report and Recommendation, the parties should be given an opportunity to confer and submit a joint proposed notice or, should they fail to reach agreement, to submit separate proposed notices.

E. Production of Employee Information

Finally, the plaintiffs request that the Court order the production of the "names, last known mailing addresses, social security numbers, positions, and dates of employment" of all employees of the Haru restaurants from the period February 18, 2004 through the present who (1) were paid some portion of their wage in tips, (2) were paid the minimum wage, or (3) "were improperly assessed a meal credit." (Pl. Memo. at 7-8). The defendants are willing to produce the names, last known address, and telephone number of any current or former employee contained within a certified class or collective action; however, they object to providing the social security number of any employee unless the plaintiffs make an additional showing of need. (Def. Opp. Memo. at

28 n.5).

Based on the broad remedial purposes of the FLSA, the Supreme Court has granted district courts broad discretion to authorize notice and discovery in FLSA actions. See Lynch v. United Services Automobile Association, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007) ("[T]o better serve the FLSA's 'broad remedial purpose,' courts may order notice. . . ."). Courts regularly order the disclosure of class and collective action members' contact information following certification, both to facilitate notice and to further discovery. See, e.g., Gambino v. Harvard Protection Services LLC, No. 10 Civ. 983, 2011 WL 102691, at *2 (S.D.N.Y. Jan. 11, 2011) (certifying collective action and ordering production of names, last known mailing addresses, telephone numbers, last known email addresses, and dates of employment for all putative class members); Thompson v. World Alliance Financial Corp., No. 08 CV 4951, 2010 WL 3394188, at *8 (E.D.N.Y. Aug. 20, 2010) (certifying collective action and ordering production of "computer-readable data file containing the names, addresses and telephone numbers of potential opt-in members" (internal quotation marks omitted)).

The defendants were previously ordered to produce the names, last known addresses, and telephone numbers of all delivery persons employed by defendant Haru Too, Inc. within the past three years. Guan Ming Lin, 2010 WL 5129013, at *10. Pursuant to the

recommendations above, it would be appropriate for the Court to order the defendants to disclose the names, last known addresses, telephone numbers, and dates of employment of all tipped employees of the Haru restaurants during the period February 18, 2007 through the present, including all delivery persons.

The plaintiffs' request for the social security numbers of these employees remains premature and invasive of the employees' privacy. The plaintiffs have proffered no new reason for requesting this information and instead re-state their prior argument that social security numbers are necessary to perform skip traces on notices returned as undeliverable. This argument is insufficient to overcome the privacy concerns of the defendants; the plaintiffs can make a new request for this information if they find their efforts at disseminating notice are impeded by the lack of collective action members' social security numbers. E.g., Delaney v. Geisha NYC, LLC, 261 F.R.D. 55, 60 (S.D.N.Y. 2009) ("The Court does not see the need to direct the disclosure of social security numbers at this stage. If Plaintiffs find that a large number of notices are returned as undeliverable, the Court can consider the matter at that time.").

Conclusion

For the reasons set forth above, I recommend the following:

(1) certification of a collective action pursuant to 29 U.S.C. § 216(b) of all tipped employees of the Haru restaurants from

February 18, 2007 through the present, including all delivery persons;

(2) that the parties be given an opportunity to confer and submit joint or separate proposed notices;

(3) that the defendants be ordered to produce the names, last known addresses, telephone numbers, and dates of employment of all tipped employees of the Haru restaurants from February 18, 2007 through the present, including all delivery persons; and

(4) that the plaintiffs' motion be denied in all other respects.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Victor Marrero, Room 660, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          April 20, 2011

Copies mailed this date to:

C.K. Lee, Esq.
Robert L. Kraselnik, Esq.
Kraselnik & Lee, PLLC
30 East 39th Street, Second Floor
New York, New York 10018

Richard J. Schaeffer, Esq.
Adler C. Bernard, Esq.
Dornbush Schaeffer Strongin & Venaglia, LLP
747 Third Avenue
New York, New York 10017