Dennis A. Lalli, Esq. (DL-0575)
Bond, Schoeneck & King, PLLC
330 Madison Avenue, 39th Floor
New York, New York  10017
Tel.:  (646) 253-2300
Attorneys for the Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
GUAN MING LIN, et al.,                          :
                                                :
                          Plaintiffs,           :
                                                :          Civil Action
          – against –                           :   No. 10 Civ. 1335 (RA)(JCF)
                                                :
BENIHANA NEW YORK, CORP, et al.,                :
                                                :          ECF CASE
                          Defendants.           :
                                                :
------------------------------------------------------------X
------------------------------------------------------------X
                                                :
LONG HUA ZHANG, et al.,                         :
                                                :
                          Plaintiffs,           :          MEMORANDUM OF LAW IN
                                                :   OPPOSITION TO PLAINTIFFS'
          – against –                           :   MOTION FOR CLASS
                                                :   CERTIFICATION PURSUANT
BENIHANA INC., et al.,                          :   TO FED.R.CIV.P. 23
                                                :
                          Defendants.           :
                                                :
------------------------------------------------------------X
------------------------------------------------------------X
                                                :
MARTIN GARCIA, et al.,                          :
                                                :
                          Plaintiffs,           :
                                                :
          – against –                           :
                                                :
BENIHANA INC., et al.,                          :
                                                :
                          Defendants.           :
                                                :
------------------------------------------------------------X

52866.1

## TABLE OF CONTENTS

Page No.

Table of Authorities ............................................................................................................. iii

SUMMARY OF ARGUMENT ...............................................................................................1

    1.   Spread of Hours Claim.........................................................................................1

    2.   Wage State Claim ................................................................................................2

    3.   WTPA Notice Claim............................................................................................5


ARGUMENT

POINT I

    NONE OF PLAINTIFFS' CLAIMS WITHSTANDS
    THE "RIGOROUS ANALYSIS" THAT DETERMINES
    WHETHER THEY HAVE CARRIED THEIR BURDEN OF
    PROVING THEY MEET THE REQUIREMENTS OF RULE 23 ....................................7

    A.  The Ratio of Opt-Ins to Class Members Negates a Showing of Numerosity .............10

    B.  Plaintiffs Have Failed to Prove That There Are Any
        Questions of Fact or Law Common to Their Proposed (or Any
        Other) Class, and That Their Claims Are Typical of Those of Any Class .................12

        1.  The preponderance of the evidences establishes that defendants
            have NO common policy of not providing spread pay when
            earned, and that the purported class representatives' spread
            pay claims are not typical of those of the proposed class members .................13

        2.  The preponderance of the evidences establishes that defendants
            have NO common policy of providing imperfect WTPA notices
            and that even if there were such a policy, the purported class
            representatives would fail the typicality test because they have
            no private right of action to sue for the WTPA notice penalty .........................17

           a.   No evidence of a common company policy to
               distribute imperfect WTPA notices. ...................................................17

        b.   No typicality because the putative Class
              Representatives have no private right of action
              to bring a lawsuit for the WTPA notice penalty.................................20

C.  Plaintiffs Are Not Adequate Representatives for a Class of Employees Who
     Did Not Receive "Proper" WTPA Notices or Wage Statements Because
     Of the Applicability of the Defenses Established by NYLL § 198[1-b], [1-d] ..........22

D.  Plaintiffs Fail to Pass the Rule 23(b)(3) Predominance Test
     Because Individual Questions Predominate over Common Questions.......................27

E.  The Proposed Class Is Not Ascertainable Because It Is Not Possible
     To Identify Who Would Belong to the Class Plaintiffs Seek to Certify......................30

POINT II

    THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL
    JURISDICTION OVER THE WTPA AND WAGE STATEMENT
    PENALTY CLAIMS BECAUSE THEY RAISE NOVEL ISSUES
    OF STATE LAW THAT SHOULD BE LEFT TO THE STATE COURTS....................32

CONCLUSION...............................................................................................................35

52866.1

# TABLE OF AUTHORITIES

**Page**

CASES

*Amchem Products, Inc. v. Windsor,*
   521 U.S. 591 (1997)..............................................................................................27

*Attenborough v. Const. and General Bldg. Laborers Local 79,*
   238 F.R.D. 82 (S.D.N.Y. 2006) ......................................................................22, 23

*Bray v. City of New York,*
   356 F.Supp.2d 277 (S.D.N.Y. 2004)................................................................33, 34

*Consol. Rail Corp. v. Town of Hyde Park,*
   47 F.3d 473 (2d Cir. 1995)...................................................................................10

*Dauphin v. Chestnut Ridge Transp. Inc.,*
   No. 06 Civ. 2730, 2009 WL 2596636 (S.D.N.Y. Aug. 20, 2009) .........................23, 24, 26, 28

*Donlon v. Bd. of Ed. of Greece Central School Dist.,*
   No. 06-CV-6027, 2007 WL 4553932 (W.D.N.Y., Dec. 20, 2007)........................33

*Duling v. Gristede's Operating Corp.,*
   267 F.R.D. 86 (S.D.N.Y. 2010) ..........................................................................13

*Eng-Hatcher v. Sprint Nextel Corp.,*
   No. 07-Civ. 7350, 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009)...............13, 22, 30

*Fang v. Zhuang,*
   No. 10-CV-1290, 2010 WL 5261197 (E.D.N.Y. Dec. 1, 2010) ...............................1

*Fiacco v. Christie's Inc.,*
   No. 00-CV-526, 2002 WL 257693 (N.D.N.Y. Feb. 21, 2002) ................................33

*Flores v. Anjost Corp.,*
   No. 11 Civ. 1531, 2012 WL 2339267 (S.D.N.Y. June 19, 2012)...........................30

*Gardner v. Western Beef Properties, Inc.,*
   No. 07-CV-2345, 2011 WL 6140518 (E.D.N.Y. Sept. 26, 2011) .......................8, 30

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
   903 F.2d 176 (2d. Cir. 1990)...............................................................................22

*Guan Ming Lin v. Benihana National Corp.,*
   275 F.R.D. 165 (S.D.N.Y. 2011) ................................................................. passim

52953.1

*Guan Ming Lin v. Benihana National Corp.,*
   No. 10 Civ. 1335, 2010 WL 4007282 (S.D.N.Y. Oct. 5, 2010) ...............................................14

*In re Hydrogen Peroxide Antitrust Litig.,*
   552 F.3d 305 (3d Cir. 2008)...............................................................................................9

*In re Initial Pub. Offerings Sec. Litig.,*
   471 F.3d 24 (2d Cir. 2006)................................................................................................8

*In re Literary Works in Elec. Databases Copyright Litig.,*
   654 F.3d 242 (2d Cir. 2011).............................................................................................8

*Kiobel v. Royal Dutch Petroleum Co.,*
   2004 WL 5719589 (S.D.N.Y. Mar. 31, 2004) ...................................................................10

*Lewis v. Alert Ambulette Service Corp.,*
   No. 11-CV-442, 2012 WL 170049 (E.D.N.Y., Jan. 19, 2012) .............................................22

*Marisol A. v. Guiliani,*
   126 F.3d 372 (2d Cir. 1997)............................................................................................12

*McBean v. City of New York,*
   No. 02 Civ. 5426, 2009 WL 2524617 (S.D.N.Y. Aug. 14, 2009) .........................................10

*Morangelli v. Chemed Corp.,*
   275 F.R.D. 99 (E.D.N.Y. 2011)........................................................................................28

*Muecke v. A-Reliable Auto Parts & Wreckers, Inc.,*
   No. 01 C 2361, 2002 WL 1359411 (N.D.Ill., June 21, 2002) ..............................................11

*Myers v. Hertz Corp.,*
   624 F.3d 537 (2d Cir. 2010)........................................................................................8, 12

*Niemiec v. Bendick Realty,*
   No. 1:04-cv-00897, 2007 WL 5157027 (E.D.N.Y. Apr. 23, 2007).......................................11

*Noble v. 93 University Place Corp.,*
   224 F.R.D. 330 (S.D.N.Y. 2004) ................................................................................10, 11

*Roach v. T.L. Cannon Corp.,*
   No. 3:10-CV-0591, 2012 WL 3686004 (N.D.N.Y., Aug. 24 2012).......................................17

*Scott v. Aetna Services, Inc.,*
   210 F.R.D. 261 (D.Conn. 2002), 22.................................................................................11

*Seabrook v. Jacobson,*
   153 F.3d 70 (2d Cir. 1998)..............................................................................................33

52953.1

*Spiegel v. Schulman,*
    No. 03-CV-5088, 2010 WL 3619577 (E.D.N.Y. 2010) ...................................................34

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,*
    546 F.3d 196 (2d Cir. 2008)...............................................................................................8, 9

*Thiebes v. Wal-Mart Stores, Inc.,*
    No. CIV. 98–802, 2002 WL 479840 (D.Or. Jan. 9, 2002) ...............................................11

*United States v. Moussaoui,*
    382 F.3d 453 (4th Cir. 2004) .........................................................................................15, 17

*Wal-Mart Stores, Inc. v. Dukes,*
    __ U.S. __, 131 S.Ct. 2541 (2011)..................................................................................8, 13

*Wicaksono v. XYZ 48 Corp.,*
    No. 10 Civ. 3634, 2011 WL 2022644 (S.D.N.Y., May 2, 2011)..........................................1

*Wilson v. Toussie,*
    No. 1-cv-4568, 2008 WL 905903 (E.D.N.Y. Mar. 31, 2008)............................................10

## STATUTES

28 U.S.C. § 1367(c) .............................................................................................................33

28 U.S.C. § 1367(c)(1)................................................................................................. passim

Executive Law § 296(6)......................................................................................................33

FLSA................................................................................................................................ passim

N.Y. Sess. Laws ch. 564, § 3 ...............................................................................................1

New York Labor Law ("NYLL") § 195[3]..................................................................... passim

NYLL................................................................................................................................. passim

NYLL § 195[1][a]........................................................................................................... passim

NYLL § 198[1][a]................................................................................................................29

NYLL § 198[1-b].............................................................................................................. passim

NYLL §198[1-d].............................................................................................................. passim

## OTHER AUTHORITIES

5 *James W. Moore et al.,* Moore's Federal Practice § 23[6] ........................................12

1 Joseph M. McLaughlin, *McLaughlin on Class Actions,* § 5:23 (6th ed. 2010) ...........9

52953.1

12 NYCRR 137-1.4 .................................................................................................26

12 NYCRR 146-1.3 ............................................................................................26, 32

12 NYCRR 146-1.3(a) .......................................................................................20, 25

12 NYCRR 146-1.3(b) ..............................................................................................25

12 NYCRR 146-1.4 .................................................................................................19

12 NYCRR 146-3.4 .................................................................................................19

12 NYCRR §§ 137-3.11, 146-1.6 ..............................................................................1

Fed. R. Civ. P. 23(a) and (b)(3) ................................................................................1

Rule 23 ...............................................................................................................passim

Rule 23(a).........................................................................................................8, 27

Rule 23(a)(2)..........................................................................................................21

Rule 23(a)(2), (3) ...................................................................................................12

Rule 23(a)(4).....................................................................................................22, 27

Rule 23(a), (b) .........................................................................................................2

Rule 23(b) ...............................................................................................................9

Rule 23(b)(1)....................................................................................................10, 12

Rule 23(b)(3)......................................................................................................9, 27

52953.1

## SUMMARY OF ARGUMENT

Plaintiffs have moved pursuant to Fed. R. Civ. P. 23(a) and (b)(3) for certification of a class consisting of all of defendants' non-exempt employees who (1) did not receive wage statements that conform to each and every requirement set forth in New York Labor Law ("NYLL") § 195[3], as recently amended by the New York Wage Theft Prevention Act (the "WTPA"), 2010 N.Y. Sess. Laws ch. 564, § 3; (2) did not receive "proper" wage and hour notices (herein "WTPA notice"), as required by NYLL § 195[1][a] (also recently amended by WTPA § 3); and (3) did not receive "spread of hours" pay (herein "spread pay") as required by 12 NYCRR §§ 137-3.11, 146-1.6.[1]  Plaintiffs also seek designation of 14 individual plaintiffs, each of whom has submitted a declaration in support of plaintiffs' motion, as Class Representatives, as well as notice to the class members, certain discovery, and access by their attorney to defendants' restaurants to post a notice at a location where class members would likely see it.[2]

The motion should be denied in its entirety.

---

[1]  By way of clearing out some underbrush, we note that plaintiffs request that notice be sent to all "prospective Rule 23 claimants" who were employed by any of the defendants at any time during the "six year[s] . . . prior to the filing of the initial complaint for this case." Memorandum of Law in Support of Plaintiffs' Motion for Class Certification (herein "Pltf. Mem.") at 3-4. However, none of the claims as to which plaintiffs seek certification was alleged in the "initial complaint." *See  Guan Ming Lin v. Benihana National Corp.,* 275 F.R.D. 165, 172 (S.D.N.Y. 2011) (finding that plaintiffs' spread of hours claim was not pled in the original Complaint). Those allegations were first alleged in the *Long Hua Zhang* Complaint that was filed on November 23, 2011, before it was consolidated with, *inter alia,* the "initial complaint" in this action. If any class is certified for any of the NYLL claims at issue on this motion (and, of course, defendants maintain that none should be certified), the class period should go back six years from November 23, 2011, not from the date of the filing of the "initial complaint." Moreover, since the WTPA did not go into effect until April 9, 2011, any class period for a claim that arises under the WTPA should go back only to April 9, 2011. *See Wicaksono v. XYZ 48 Corp.,* No. 10 Civ. 3634, 2011 WL 2022644, *6 n.2 (S.D.N.Y., May 2, 2011) (WTPA does not operate retroactively).

[2]  To address another preliminary matter, paragraph 5 of plaintiff's Notice of Motion states that plaintiffs seek "[a]ccess by Plaintiffs' counsel during regular business hours to each of Defendants' Haru restaurants in New York City to post the Court facilitated notice at a location that is reasonably expected to be viewed by prospective Class Members." Plaintiffs neither brief this issue nor allege facts that would explain why such access is necessary. Nor do they bother mentioning that the Court has already denied this request once (*see* docket entry no. 94) or explain why, having denied it earlier, the Court should grant it now. Moreover, this is not the first case in which a court has denied such a request by plaintiffs' attorney. *Fang v. Zhuang,* No. 10-CV-1290, 2010 WL 5261197, *5 (E.D.N.Y. Dec. 1, 2010).

1. **Spread of Hours Claim.**  The declarations submitted by the 14 putative Class Representatives in support of certification of their spread of hours claim demonstrate lack of commonality on their face.  Three of these declarants (Lye Ming Aw, Ling Ping Yang, and Hong Jun Zhang) do not even deny that they were entitled to spread of hours pay (herein "spread pay") that they never received.  Seven – or fully half – of them (Zeng Guan Li, Tian Bao Liang, Wan Rong Lin, Kong Shun Ni, Gen Liang Shi, Pei Guan Zhuo, and Zhi Ping Wang) admit that they received spread pay after January 1, 2011. Only four (Guan Ming Lin, Salomon Mendoza, and Luis Sidronio Solano, and Valentin Vivar) assert that they were entitled to spread pay but never received it.  Moreover, defendants proffer documentary payroll information which establishes that 10 of the 11 plaintiffs whose declarations state that they should have received spread of hours pay but did not, *did*, in fact, receive proper spread pay prior to January 1, 2011.  And while one of those 10, Guan Ming Lin, received spread pay in the concededly erroneous amount of $7.15 per hour instead of $7.25 during the first three weeks after July 24, 2009, when the minimum wage increased from $7.15 to $7.25, Mr. Lin did properly receive spread pay at the correct rate of $7.25 starting in the fourth week after the increase in the minimum wage.  These facts demonstrate that plaintiffs cannot withstand the "rigorous analysis" that this Court is required to employ to determine whether they have established by a preponderance of the evidence that (a) they meet the commonality and typicality tests of Rule 23(a), (b) they are adequate class representatives, (c) common questions predominate over individual questions related to whether the named plaintiffs received spread pay and, if so, in the proper amount, and (d) whether the proposed class is ascertainable.

2. **Wage Statement Claim.**  The evidence plaintiffs submit in support of certification of their wage statement claim is limited to a single wage statement that they claim is imperfect because it does not contain (1) the employer's trade name, address, and telephone number or (2)

2

the amount of tip credit taken. This, they assert, means that defendants' wage statements fail to conform to the requirements of NYLL § 195[3] and therefore entitles all class members whose wage statements supposedly were likewise deficient to the penalty of $100 per employee per week (subject to a cap of $2,500 per employee) provided in NYLL §198[1-d].

However, NYLL § 198[1-d] provides a complete defense to such a penalty claim where "the employer made complete and timely payment of all wages due . . . to the employee who was not provided statements as required by" § 195[3]. There are very few plaintiffs or potential class members as to whom the record suggests defendants would not be able establish this defense; certainly there is no evidence or reason to suppose that any employee whose wage statement was missing only the requisite business identification information was paid less than all wages due. This, of course, creates commonality/typicality problems for the penalty claim class, and predominance issues as well, since individualized determinations as to whether each Class Representative, plaintiff, and/or class member received complete and timely payment of all wages due will predominate over any common questions there may be regarding the wage statements issue. This also militates against the ascertainability of the class.

In fact, it is only tipped employees whose wage statements did not include information about tip credits taken as to whom the record suggests defendants *might* not be able to establish their defense. (To be sure, defendants do not concede that tipped employees received less than the full amount of wages they were due.) A class consisting of tipped employees should not be certified for several reasons. First, this Court has already held that there is insufficient commonality among defendants' tipped employees to warrant certification of a Rule 23 class of such employees, because the liability issues as to such employees will depend on whether the level of their proficiency in the English language was sufficient for them to understand the tip

52866.1

credit notices that defendants provided in English. *Guan Ming Lin v. Benihana National Corp.,* 275 F.R.D. at 177-78. Since defendants very likely will be able to establish their § 198[1-d] defense with respect to tipped employees who *are* proficient in English (the lack of a basis for disallowing the tip credit as to them means that there is no basis in the record for supposing that they were not paid the full wages they were due), this Court's previous holding applies equally to plaintiffs' proposed wage statement class as it did to their proposed (and rejected) tip credit class.

Moreover, the § 198[1-d] defense is available for employees to whom the employer paid "all wages due" under the NYLL, including tipped employees. If the employer paid the full amount of money due to a tipped employee who is not proficient in English, that employer should not be stripped of his defense to the wage statement penalty just because the tip credit he took might later be disallowed on the ground that the requisite notice was provided in the wrong language. The employee still will have received all the money he was due from the employer under the NYLL; the mere fact that he is also receiving the windfall of an extra amount of money equal to the disallowed tip credit previously taken (plus, possibly, liquidated damages) should not mean that he is also entitled to the $2,500 wage statement penalty as well. Since the defendants may well be able to establish their § 198[1-d] defense as to all members of the proposed wage statement class, that proposed class is, at the very least, not sufficiently ascertainable, in addition to lacking the requisite numerosity and commonality with the Class Representatives, to warrant certification.

Defendants also note that the WTPA has been in effect for less than 17 months. No court has yet decided a question regarding the § 198[1-d] defense or, for example, the degree, if any, to which a court has discretion to decide that an employer who fails merely to include the employer's trade name, address, and telephone number on its wage statements should be equally

52866.1

as liable for the $2,500 per employee penalty as the employer who pays his employees in cash, cheats them of their wages, and fails to provide any wage statement at all.  Nor have defendants been able to locate any administrative material from the New York State Department of Labor that addresses the extent to which the wage statement requirements will be construed literally in penalty cases.  In these circumstances, the Court should decline to exercise supplemental jurisdiction over the plaintiffs' wage statement claim pursuant to 28 U.S.C. § 1367(c)(1), because that claim raises novel questions of state law that, in the interest of comity, should be decided in the first instance by the courts of the State of New York.

    3.  **WTPA Notice Claim.**  The WTPA confers private right of action for a violation of the notice requirements set forth in NYLL § 195[1][a] *only* upon employees to whom the employer fails to provide the requisite notice within ten days after the employee was hired.  *See* NYLL  § 198[1-b].  A review of the declarations of the 14 putative Class Representatives reveals that *every single one of them* was hired well before April 9, 2011, the date the WTPA took effect; therefore, none of them was ever entitled to notice under the WTPA within ten days of being hired.[3]  Accordingly, none of the would-be Class Representatives has a claim under § 198[1-b] for the statutory penalty that may be brought in this Court, so none of them has a claim which is typical of those of the members of the putative class.

    Even if the Class Representatives were deemed to have a private right of action under § 198[1-b], there still would be no basis for Rule 23 certification for lack of a common employer policy.  To support certification of their WTPA notices claim, plaintiffs proffer 12 WTPA

---

    [3]   Plaintiffs cite NYLL § 198[1-d] for the proposition that failure to provide the notice required by NYLL § 195[1][a] entitles them to "statutory damages of $50 per workweek, up to a maximum of $2,500 and reasonable attorneys fees and costs."  *See* Pltf. Mem. at 6. Section 198[1-d], however, provides a remedy for failures to comply with the wage statement provisions of § 195[3], not for failures to comply with the WTPA notice provisions of § 195[1].  The remedial provisions for violations of the § 195[1]  notice provisions are found only in § 198[1-b].

notices that defendants distributed, 9 of which are signed by putative Class Representatives. *See* Pltf. Mem., ex. B.  Plaintiffs allege that 10 of the 12 notices are not in full conformity with the requirements of NYLL § 195[1], supposedly thereby entitling plaintiffs to the maximum penalty of $2,500 per employee provided by the NYLL.  *See* Pltf. Mem. at 6.  However, the alleged flaws in defendants' WTPA notices are not, and are not alleged or even argued to be, the result of a single, common practice or policy.  Of the 12 notices plaintiffs submit, there are two (Chun Lin and Maldonado Saloman Mendoza) that plaintiffs do not (and cannot) claim are less than fully compliant.  There are two more (Anna Velasco and Israel Velasco) as to which plaintiffs' challenge simply is unfounded.  (*See* affidavit of Seth Rose, sworn to September 4, 2012 (herein "Seth Rose Aff't")  ¶¶ 14, 16.)  And of the remaining 8, one (Zeng Li) is allegedly out of compliance because it is not in the employee's stated primary language, four (Qin Sen Hon, Tian Bao Liang, Zhi Ping Wang, and Pei G. Zhuo) are allegedly out of compliance because they do not include certain business identification information that § 195[1] requires, and 8 (Lye Awe, Qin Sen Hon, Tian Bao Liang, Gen Liang Shi, Zhi Ping Wang, Hong Jun Zhang, and Pei G. Zhuo) are allegedly out of compliance because, supposedly, the wrong employee pay rate is indicated.  Moreover, the WTPA notices that were provided to employees whose primary language is other than English were prepared by six different managers at six different restaurants, and it seems that each manager completed the form differently.  (Seth Rose Aff't ¶¶ 9-12, 14-15, 17.)  Certification should be denied because there is no allegation and no evidence of a common employer practice in regard to WTPA statements.

There is still another reason why the Court should decline to certify a WTPA notice class. The second paragraph of NYLL § 198[1-b] provides exactly the same defense to a penalty claim for failure to provide WTPA notices pursuant to § 195[1] that  § 198[1-d] provides to a penalty claim for violation of the wage statement provisions of § 195[3].  That is, it is a defense to a

penalty proceeding under § 198[1-b] that "the employer made complete and timely payment of all wages due" under the Labor Law.  Since, as with the wage statement class, defendants may well be able to establish their § 198[1-b] defense as to all or most members of the proposed wage statement class, that proposed class is, at the very least, not sufficiently ascertainable, in addition to lacking the requisite commonality with the Class Representatives, to warrant certification.

And finally, as with the wage statement class, the WTPA notice class claims raise issues of first impression under a new state statute that have not yet been addressed by the State courts or by the New York State Department of Labor.  Among these questions are whether anyone (such as the putative Class Representatives) other than employees who did not receive WTPA notices within the first ten business days after they were hired has a private right of action under the statute, whether defendants indicated the wrong rate of pay on the WTPA notices for tipped employees, and whether the court has discretion to refrain from awarding the penalty (or, perhaps, to  reduce the full penalty) where there is evidence of attempted but imperfect compliance (as distinct from no compliance whatsoever).  For these reasons, the Court should decline, pursuant to 28 U.S.C. § 1367(c)(1), to exercise supplemental jurisdiction over the plaintiffs' WTPA notice claim because that claim raises novel questions of state law that, in the interest of comity, should be decided in the first instance by the State courts.

52866.1

<u>POINT I</u>

**NONE OF PLAINTIFFS' CLAIMS WITHSTANDS THE "RIGOROUS ANALYSIS" THAT DETERMINES WHETHER THEY HAVE CARRIED THEIR BURDEN OF PROVING THEY MEET THE REQUIREMENTS OF RULE 23**

Fed.R.Civ.P. 23 ("Rule 23") governs motions for class certification.  Although, as plaintiffs point out, there may be an inclination to certify NYLL claims following the conditional certification of an FLSA collective action, *see* Pltf. Mem. at 12, the requirements for certification under Rule 23 are much more stringent than those for conditional certification of a collective action, and prior conditional collective certification is far from dispositive – if even relevant at all.  *Gardner v. Western Beef Properties, Inc.,* No. 07-CV-2345, 2011 WL 6140518, *1 (E.D.N.Y. Sept. 26, 2011).

The proponent of class certification bears the burden of proving, by a preponderance of evidence, the four threshold requirements of Rule 23(a).  *In re Literary Works in Elec. Databases Copyright Litig.,* 654 F.3d 242, 249 (2d Cir. 2011); *Myers v. Hertz Corp.,* 624 F.3d 537, 547 (2d Cir. 2010).  The court may certify a class "only if . . . satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes,* __ U.S. __, 131 S.Ct. 2541, 2551-52 (2011).

"Frequently, that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim[s]." *Dukes,* 131 S.Ct at 2551; *accord, Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,* 546 F.3d 196, 202 (2d Cir. 2008) (district court makes factual determinations when there is "overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement").  This analysis requires the Court to resolve the relevant factual disputes, even if they overlap with issues that go to the merits of the case. *See In re Initial Pub. Offerings Sec. Litig.,* 471 F.3d 24, 41-42 (2d Cir. 2006);

52866.1

*see also* 1 Joseph M. McLaughlin, *McLaughlin on Class Actions,* § 5:23 (6th ed. 2010) ("[t]he predominance inquiry (like the commonality inquiry) is closely linked to the merits of the plaintiffs' claim, because the nature of the evidence needed to resolve a factual or legal question determines whether any particular question is common or individual"). "[T]he court may 'consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take.'" *In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 317 (3d Cir. 2008) (citation omitted).

The four "prerequisites" that the plaintiffs are required to satisfy in order to obtain certification under Rule 23 are "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23. These elements are commonly referred to a "numerosity, commonality, typicality, and adequacy." *Teamsters*, 546 F.3d at 201-02

Plaintiffs also bear the burden of proving by a preponderance of evidence that they satisfy at least one of the three subdivisions of Rule 23(b). In the instant case, although plaintiffs' Notice of Motion fails to indicate which subdivision is at issue, their supporting memorandum of law argues, albeit in a wholly conclusory fashion, that their proposed class satisfies the requirements of Rule 23(b)(3). *See* Pltf. Mem. at 18-19. Plaintiffs therefore must satisfy the Court by a preponderance of the evidence that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) a "class action is superior to other available methods" for adjudicating the controversy. Rule 23(b)(3).

9

52866.1

In addition to these textual requirements, there is an implied requirement that the class be ascertainable. This requirement "obligates plaintiffs to demonstrate that the class they seek to certify is readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling." *McBean v. City of New York*, No. 02 Civ. 5426, 2009 WL 2524617 (S.D.N.Y. Aug. 14, 2009). When a proposed class definition "links class membership with the merits of the class members' claims," the class is not ascertainable. *Kiobel v. Royal Dutch Petroleum Co.*, 2004 WL 5719589, *5 (S.D.N.Y. Mar. 31, 2004); *see also, Wilson v. Toussie*, No. 1-cv-4568, 2008 WL 905903, *4 (E.D.N.Y. Mar. 31, 2008) ("[a] class's definition will be rejected when it requires addressing the central issue of liability in a case and therefore the inquiry into whether a person is a class member essentially require[s] a mini hearing on the merits of each [plaintiff's] case") (quotations omitted).

## A.   The Ratio of Opt-Ins to Class Members Negates a Showing of Numerosity

Rule 23(b)(1) provides that the numerosity requirement is met if "the class is so numerous that joinder of all members is impracticable." Numerosity is presumed where there are at least 40 class members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 482 (2d Cir. 1995); *Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004). The class plaintiffs seek to represent (*i.e.,* all of defendants' non-exempt employees employed since February 18, 2004; *but see,* n.1, *supra* at 1) is indeed numerous; the list of non-exempt employees to whom "opt-in" notice was sent included 1386 names. *See* Affirmation of Dennis A. Lalli signed September 4, 2012 ("Lalli Aff.") ¶ 3.

However, only 34 opt-in claimants filed Consents to Sue after receiving notice of the pendency of the action. *See* Pltf. Mem. at 1. That is a ratio of less than 2.5%. One court has held that a similar ratio – 425 individuals, or 2.7%, out of more than 15,000 potential members

10

of an FLSA collective class was such a small percentage that it cautioned against a finding that joinder under Rule 23 was impracticable; the court denied certification. *Thiebes v. Wal-Mart Stores, Inc.*, No. CIV. 98–802, 2002 WL 479840, *3 (D.Or. Jan. 9, 2002); *see also Muecke v. A-Reliable Auto Parts & Wreckers, Inc.*, No. 01 C 2361, 2002 WL 1359411 (N.D.Ill., June 21, 2002).  Where there are only 34 opt-ins, not only is the number well below the 40-class member presumption for class status, but joinder is also far from impractical.

  Decisions in this Circuit that have declined to follow *Thiebes* have done so on grounds not present here.  In *Noble,* only three out of several hundred FLSA collective class members had opted in to the FLSA action.  *Noble,* 224 F.R.D. at 342.  But the court rejected the defendant's contention that this fact negated numerosity, because *the plaintiff had "provided evidence* tending to suggest that potential class members may have failed to join the FLSA collective action because they feared reprisal, particularly given their citizenship status." *Id.* (emphasis added).  In *Scott v. Aetna Services, Inc.,* 210 F.R.D. 261, 266-67 (D.Conn. 2002), 22 out of potentially 281 Rule 23 class members had filed opt-ins in response to an FLSA class notice. The court found that "*evidence* that potential class members failed to join the FLSA class action because they feared reprisal" warranted declining to find that all potential members of the class who wanted to join had, in fact, joined. *Id.* at 267 (emphasis added).  And in *Niemiec v. Bendick Realty,* No. 1:04-cv-00897, 2007 WL 5157027 (E.D.N.Y. Apr. 23, 2007), where 10 of potentially 127 employees had opted in to the FLSA class, the court rejected defendant's *Thiebes* argument because "mitigating factors" were present; *i.e.,* the absent members "spoke poor English, were unfamiliar with the American legal system, were undocumented immigrants afraid of exposing their status, or were employed by successors to the defendant corporation and afraid of losing their jobs." *Id.* at *6-*7.

52866.1

None of these factors, all of which were established by unrebutted admissible evidence in those cases, is present in the instant case. This action has been pending since February 2010 and there have been no complaints or reports of retaliation by any of the original plaintiffs, nor by any of the named plaintiffs in the actions that were filed in November and December 2011 and then consolidated with this one, nor by any of the opt-ins, whose consents to sue were filed in or before November 2011. *See* Seth Rose Aff't ¶¶ 18, 19. Moreover, the mangers of all the defendant restaurants have been instructed not to retaliate against anyone for joining this action. *Id.* ¶ 18. And since plaintiffs' papers in support of the instant motion adduce no evidence that any of the plaintiffs or anyone else fears retaliation, it cannot be found that they have carried their burden of proof on this issue.

In sum, with only 34 opt-ins having filed consents to sue in response to the notice of pendency of this action, plaintiffs have failed to show that joiner would be impractical, and hence have failed to meet the requirement of Rule 23(b)(1).

**B.  Plaintiffs Have Failed to Prove That There Are Any Questions of Fact or Law Common to Their Proposed (or Any Other) Class, and That Their Claims Are Typical of Those of Any Class**

Rule 23(a)(2), (3) requires that any proposed class must "(2) involve questions of law or fact common to the class, [and] (3) involve a class of plaintiffs whose claims are typical of those of the class." *Myers,* 624 F.3d at 547. While "[t]he commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)," *Marisol A. v. Guiliani,* 126 F.3d 372, 376 (2d Cir. 1997), it is well to note that commonality "tests the definition of the class itself" while typicality "focuses on how the named plaintiff's claims compare to the claims of other class members." 5 *James W. Moore et al., Moore's Federal Practice* § 23[6]. "The commonality and typicality requirements, together,

12

52866.1

require Plaintiffs to show that they raise questions of fact or law, arising out of a single course of conduct or set of events, that are common to all putative class members and that their individual claims and circumstances are sufficiently similar to those of the absent class members so as to ensure that the named plaintiffs will press the claims of all class members." *Duling v. Gristede's Operating Corp.,* 267 F.R.D. 86, 97 (S.D.N.Y. 2010). "Plaintiffs must produce some 'quantum of evidence to satisfy the commonality and typicality requirements, usually in the form of affidavits, statistical evidence, or both, tending to show the existence of a class of persons affected by a company-wide policy or practice of discrimination.'" *Eng-Hatcher v. Sprint Nextel Corp.,* No. 07-Civ. 7350, 2009 WL 7311383, *6 (S.D.N.Y. Nov. 13, 2009) (internal citation omitted.)

"What really matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes,* 131 S.Ct. at 2662 (internal quotation and citation omitted). Therefore, in order for there to be a legitimate "cause to believe that all [of a proposed class'] claims can productively be litigated at once," not only must those claims depend on a common contention, but that "common contention . . . must be of such a nature that it is capable of classwide resolution – which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

> 1. **The preponderance of the evidences establishes that defendants have NO common policy of not providing spread pay when earned, and that the purported class representatives' spread <u>pay claims are not typical of those of the proposed class members.</u>**

Plaintiffs purport to assert a claim of spread of hours violations on behalf of all of defendants' non-exempt employees. *See* Pltf. Mem. at 8-11. However, they submit *no evidence whatsoever* that defendants have a company-wide practice of not providing spread pay to non-

exempt employees, and defendants have proved by a preponderance of the evidence that they do, in fact, have a policy of providing spread of hours pay when it is earned, so plaintiffs fail the commonality test.  Defendants also have proved that 10 out of the 11 putative Class Representatives who claim they never received spread pay did, in fact, receive it; and the declaration of 11th Class Representative does not prove that he was ever entitled to spread pay.

Plaintiffs' reliance on the deposition testimony of Seth Rose (*se* Pltf. Mem. at 9, 10) as evidence that defendants have a policy of not providing spread pay is badly misplaced. Defendants proffered the testimony of Mr. Rose in place of Richard Stockinger, President and Chief Executive Officer of defendant Benihana, Inc., to testify about defendant's corporate structure, *see Guan Ming Lin v. Benihana National Corp.,* No. 10 Civ. 1335, 2010 WL 4007282, *2 (S.D.N.Y. Oct. 5, 2010), *not* to testify about defendants' practices regarding spread pay. Notably, at the time of Mr. Rose's deposition (November 11 and December 10, 2010; *see* Lalli Aff. ¶ 4 & ex. A), the Complaint, even after two amendments, contained no allegations whatsoever about spread pay.  *See Guan Ming Lin v. Benihana National Corp.,* 275 F.R.D. at 172 (finding that plaintiffs' Second Amended Complaint contained no reference to spread pay and, accordingly, that it had "depriv[ed] defendants of any notice that this claim" was raised).  It was not until November 2011, a full year after Mr. Rose's deposition, that plaintiffs filed the *Zhang* Complaint, which was later consolidated with the original action and which first raised a spread pay claim in this action.  Thus, the surprise is not that Mr. Rose testified "I don't know" when asked if one of the plaintiffs received spread pay (*see* Pltf. Mem. at 9, 10) and to other questions regarding defendants' practices regarding spread pay (*see id.* at 11); the surprise is that plaintiffs quote this testimony three times in their memorandum of law as proof that defendants did not

14

provide spread pay.[4]  Mr. Rose's testimony – which consists of the *entirety* of the evidence plaintiffs cite in support of their contention that defendants maintain a policy of not providing spread pay (*see* Pltf. Mem. at 8 – 11) is inadmissible, and should not be considered on the spread pay issue, because it is stated expressly *not* to be made on personal knowledge and is wholly speculative.  *Cf. United States v. Moussaoui,* 382 F.3d 453, 481 (4th Cir. 2004) (written testimony "inadmissible because it is Witness A's speculation, not his personal knowledge").

By contrast, defendants have proffered the affidavit of Sharon Rose in opposition to the instant motion.  Ms. Rose is the Tax Director of the corporate parent of the defendant Haru restaurants.  The payroll function that provides payroll services to those restaurants reports to her and has done so for over 12 years.  Affidavit of Sharon Rose, sworn to August 29, 2012 ("Sharon Rose Aff't") ¶¶ 1, 2.  She is familiar with the payroll documents that the payroll function maintains.  *Id.* ¶ 4.  Ms. Rose states on personal knowledge that the defendant restaurants pay their non-exempt employees spread of hours pay when their shifts end more than ten hours after they begin and describes where the spread of hours pay appears on employee wage statements. *Id.* ¶¶ 5 – 7.  Ms. Rose's testimony is competent, is based on personal knowledge, and is not refuted by any admissible evidence in the record of this motion.

Plaintiffs thus have failed to establish commonality with regard to their spread of hours claim.  They have not proved by a preponderance of the evidence sufficient to withstand "rigorous analysis" that defendants maintain a company-wide policy of not providing spread pay, and defendants have proved by a preponderance of the evidence that defendants do indeed provide spread pay.

---

[4]  It also may be noted that the questions posed to Mr. Rose regarding the hours certain employees worked were based on those employees' *scheduled* hours, not defendants' records of time *actually worked, see* Pltf. Mem. at 9, and that plaintiffs append an employee work schedule to their memorandum of law, *see* Pltf. Mem. ex. C, not a record of time worked.

52866.1

Moreover, plaintiffs fail to demonstrate typicality.  Each of the 14 putative Class Representatives submits a declaration in support of the instant motion.  Seven of them (Zeng Guan Li, Tian Bao Liang, Wan Rong Lin, Kong Shun Ni, Gen Liang Shi, Zhi Ping Wang, and Pei Guang Zhuo) admit that they received spread of hours pay after January 1, 2011, although they deny having received it before then.  Yet defendants have proved that each of these seven did, in fact, receive spread pay, by submitting payroll records kept in the ordinary course of business which show that these Class Representatives did, in fact, receive spread pay before January 2011.  *See* Sharon Rose Aff't ¶ 9 & ex. B.  Consequently, none of these seven has anything in common with a proposed class of non-exempt employees who supposedly did not receive spread pay.

Four of the putative Class Representatives (Guan Ming Lin, Salomon Mendoza, Sidronio Solano, and Valentin Vivar) submit declarations which state they never received spread of hours pay at all.  Yet defendants have proved that three of these four (Guan Ming Lin,[5] Salomon Mendoza, and Sidronio Solano) did, in fact, receive spread pay, by submitting payroll records kept in the ordinary course of business which show that they were paid the spread of hours premium.  *See* Sharon Rose Aff't ¶ 8 & ex. A.  Consequently, none of these three has anything in common with a proposed class of non-exempt employees who supposedly did not receive spread pay.

The declaration of the fourth of these four, Valentin Vivar, is of dubious typicality with the proposed class.  He says he worked for the defendants from March 2009 until May 2011.  Vivar Dec. ¶ 1.  He also says he was paid $7.75 per hour during the period from March 2009 to

---

[5]    Ms. Rose also explains that the difference between the $28.60 in spread pay that plaintiff Guan Ming Lin received in August 2009 and the $29 that counsel for the plaintiffs says he should have received (*see* Pltf. Mem. at 9) is explained by the fact that the minimum wage (and, hence the amount of spread of hours pay) changed from $7.15 per hour to $7.25 effective July 24, 2009, and that the $.40 per paycheck shortfall in Mr. Lin's spread pay during the first two pay periods ending in August 2009 was due to a failure by the manager of the restaurant where Mr. Lin worked to put this increase into effect.  *See* Sharon Rose ¶¶ 7, 11-14 & ex. C, D.  This mistake was corrected starting with Mr. Lin's next paycheck.  *Id.* ¶ 15 & ex. E, F.

52866.1

June 2009, and $5.00 per hour from January 2011 until May 2011; he does not say what he was paid during the interim between these dates. *Id.* ¶ 3. During the 2009 period, it may well be that he was not entitled to spread of hours pay, since prior to January 2011 spread pay was owed only to employees paid at or slightly above the minimum wage; *see Roach v. T.L. Cannon Corp.,* No. 3:10-CV-0591, 2012 WL 3686004, *1-*3 (N.D.N.Y., Aug. 24 2012) (collecting cases); Mr. Vivar does not provide enough information to determine whether he was or was not entitled to spread pay. Since plaintiffs bear the burden of proof on the issue of typicality, the absence of evidence that Mr. Vivar was entitled to spread pay during 2009 means that even he fails the typicality test, at least for the 2009 period identified in his declaration. As for the post-January 2011 period, the fact that seven of the putative Class Representatives (Zeng Guan Li, Tian Bao Liang, Wan Rong Lin, Kong Shun Ni, Gen Liang Shi, Zhi Ping Wang, and Pei Guang Zhuo) admit that they received spread pay after January 2011 tends to cast doubt on whether Mr. Vivar was entitled to but did not receive spread pay after January 2011.

The other three putative Class Representatives (Lye Ming Aw, Ling Ping Yang, and Hong Jun Zhang) do not even deny having received spread of hours pay.

Plaintiffs' showing of commonality and typicality on their spread of hours claim does not withstand *any* analysis, much less a "rigorous analysis." They have not satisfied the Rule 23 requirements of commonality and typicality by a preponderance of the evidence.

> **2. The preponderance of the evidences establishes that defendants have NO common policy of providing imperfect WTPA notices and that even if there were such a policy, the purported Class Representatives would fail the typicality test because they have <u>no private right of action to sue for the WTPA notice penalty</u>**

Plaintiffs argue that defendants distributed WTPA notice forms that did not conform with every requirement set forth in NYLL § 195[1][a], and therefore that they are entitled to the

52866.1

penalty of $50 per workweek, up to a maximum of $2,500 per employee, that they say NYLL § 198[1-d] provides. *See* Pltf. Mem. at 6 – 8; *but see* n.3, *supra* at 5. They are wrong. First, they have proved no company-wide policy to distribute imperfect WTPA notices, and therefore fail to establish the commonality necessary to establish a notice penalty class. And second, the NYLL does not confer a private right of action on any of the purported Class Representatives to assert a claim for the WTPA notice penalty, so they lack typicality with any purported class member who might have such a private right of action.

### a.  <u>No evidence of a common company policy to distribute imperfect WTPA notices.</u>

To support their WTPA notice penalty claim, plaintiffs proffer 12 WTPA notices that defendants distributed, 9 of which are signed by putative Class Representatives (Lye Aw, Qin Sen Hon, Zeng Quan Li, Tian Bao Liang, Saloman Mendoza, Gen Liang Shi, Zhi Ping Wang, Hong Jun Zhang, and Pei Guang Zhuo). *See* Pltf. Mem., ex. B. These notices by themselves negate any showing of a common company policy to distribute WTPA notices that do not comply with the requirements set forth in NYLL § 195[1][a]. There is no common element of non-compliance among them, and indeed, fully one-third of these notices have no flaws whatsoever. Thus, there is no evidence of a common policy regarding any alleged non-compliance with § 195[1][a].

Plaintiffs' Memorandum of Law lists 10 of the 12 notices attached thereto as exhibit B and identifies various ways they contend those notices fail to comply with § 195[1][a]. *See* Pltf. Mem. at 7. Notably, they do not contend that there is any shortcoming at all in the notices for Chun Lin and Maldonado Saloman Mendoza that are contained in their exhibit B. Plaintiffs do claim that the statement for Anna Velasco is deficient because it does not include her overtime rate of pay. *Id.* However, Ms. Velasco's notice indicates that she had two separate rates of pay,

52866.1

depending on whether she was bartending or working as a cashier, and there is, in fact, no place on the form for an overtime rate of pay to be filled in; instead, the overtime pay section of the form says, "Th[e overtime rate of pay] must be at least 1½ the worker's weighted average of the multiple rates of pay for the week, with few exceptions. The weighted average is the total regular pay divided by the total hours worked in the week. The overtime rate may vary from week to week depending on how many hours you worked at each rate of pay. The overtime rate may vary from week to week." The WTPA notice to Ms. Velasco is not flawed at all.

Nor is the notice to Israel Velasco deficient. Plaintiffs say that "Mr. Velasco's overtime rate [which is indicated as $8.62 per hour] cannot be correct if the tip credit allowance per hour is $2.25." Pltf. Mem. at 7. Mr. Velasco, however, was a server. (Seth Rose Aff't ¶ 16.) The Hospitality Industry Wage Order provides that servers are "food service workers," 12 NYCRR 146-3.4, and that the overtime rate for food service workers is $8.625 per hour, precisely because that is the result of multiplying the minimum wage rate of $7.25 by 1.5, to get $10.875 per hour, and then subtracting the permissible tip credit of $2.25 to get $8.625. *See* 12 NYCRR 146-1.4.

Thus, Mr. Velasco's WTPA notice was correct, as well. This means that 4 out of the 12 WTPA notices that plaintiffs proffered – fully one third of them – were entirely correct. This surely cannot be evidence of a common practice or policy of non-compliance with the requirements of § 195[1][a].

Plaintiffs say that one of the remaining 8 WTPA notices (Zeng Li's) is out of compliance because it is not in the employee's stated primary language. Pltf. Mem. at 7. This was because of a mistake by an individual manager. Seth Rose Aff't ¶ 11. Even if it were true that Mr. Li's notice is out of compliance for this reason, that would hardly constitute evidence of a company-

52866.1

wide practice or policy of not providing WTPA notices in the employee's primary language. Fully 9 – or 75% -- of the WTPA notices that plaintiffs proffer are in Chinese or Spanish.

Plaintiffs say further that the WTPA notices for in Qin Sen Hon, Tian Bao Liang, Zhi Ping Wang, and Pei G. Zhu fail to comply with § 195[1][a] for lack of certain business identification information that § 195[1][a] requires.  Pltf. Mem. at 7.  The fact that this deficiency infects only one third of the 12 WTPA notices plaintiffs have proffered suggests the lack, rather than the presence, of a common practice or policy of non-compliance.  Moreover, this supposed deficiency results from the fact that some managers, but not others, incorrectly copied the English language version of the notices that the managers got from the Human Resources department in Miami onto the appropriate non-English language version of the form.  Seth Rose Aff't ¶¶ 4-10; see also, id. ¶ 15.  This, too, reflects the lack of a common policy or practice, not the presence of one.

Finally, plaintiffs say that the wage rate indicated on section 3 of the WTPA forms for Lye Ming Aw, Qin Sen Hon, Tian Bao Liang, Gen Liang Shi, Zhi Ping Zhi Ping Wang, Hong Jun Zhang, and Pei G. Zhuo is erroneous because the number $5.65 is written on each, rather than the statutory minimum wage of $7.25.  Yet the Hospitality Industry Wage Order provides, "A service employee [such as the plaintiff delivery workers] shall receive a wage of at least $5.65 per hour" provided they receive at least $1.60 per hour in tips.  12 NYCRR 146-1.3(a). Plaintiffs' contention regarding this aspect of the defendants' WTPA notices is not only thus wrong; it is also disingenuous – if defendants had written $7.25 on the wage rate line of the form, plaintiffs could contend with no more or less force that defendants should have written in $5.65.

Plaintiffs have raised at most a few questions as to whether a few of defendants' WTPA notices may have been subject to a few individualized mistakes.  They have not adduced evidence

of a common corporate practice or policy of distributing flawed WTPA notices, much less proven

by a preponderance of the evidence that such a practice or policy exists.  Therefore, they have

failed to establish the commonality necessary to meet the requirement of Rule 23(a)(2).

### b.   No typicality because the putative Class Representatives have no private right of action to bring a lawsuit for the WTPA notice penalty.

The WTPA identifies two times when an employer is obligated to provide a WTPA

notice to employees:  (i) "at the time of hiring" and (b) "on or before February first of each

subsequent year of the employee's employment with the employer." NYLL § 195[1][a].   The

first paragraph of NYLL § 198[1-b] provides,

> If any employee is not provided within ten business days of his or her first day
> of employment a notice as required by [§ 195[1][a]], he or she may recover in
> a civil action damages of [$50] for each work week that the violations occurred
> or continue to occur, but not to exceed a total of [$2,500].

Notably missing from this paragraph is any provision that confers a private right of action upon

employees to whom the employer fails to provide the requisite notice "on or before February

first of each subsequent year."  The second paragraph of § 198[1-b] provides that the

Commissioner of Labor may bring "any legal action necessary, including administrative action"

on behalf of *any* employee to whom an employer fails to provide the requisite notice, presumably

including employees who failed to receive their notice on or before February first of any year

following the year of their hire.  Clearly the legislative scheme confers a private right of action

for the WTPA penalty only upon those who do not receive their notice at hire, and not upon

those who do not receive it in January in any subsequent year.

The declarations of every putative Class Representative include a statement declaring

when the declarant was employed by one of the defendant Haru restaurants.  Every single one of

those declarations states that the declarant started working for the defendants on a date that

preceded April 9, 2011, the date the WTPA went into effect.  It follows that not one of the putative Class Representatives was entitled to receive a WTPA notice "at the time of hiring." Therefore, none of them falls into the category of employees who are entitled to bring a private right of action for the penalty provided for in the first paragraph of § 198[1-b].

Accordingly, if there were a class consisting of employees who are entitled to bring a private right of action to recover a penalty pursuant to § 198[1-b], none of the putative Class Representatives is typical of any member of that class.

Plaintiffs thus have failed to make the requisite showing by a preponderance of the evidence of *either* commonality *or* typicality with regard to their WTPA notice penalty claim.

### C. Plaintiffs Are Not Adequate Representatives for a Class of Employees Who Did Not Receive "Proper" Wage Statements or WTPA Notices Because Of the Applicability of the Defenses Established by NYLL § 198[1-b], [1-d]

Class Representatives must "fairly and adequately protect the interests of the class." Rule 23(a)(4).  In addition to demonstrating that their counsel is qualified to conduct the litigation, the plaintiffs "must show . . . that there is an absence of conflict and antagonistic interests between them and the class members" in order to meet this requirement.  *Eng-Hatcher*, 2009 WL 7311383 at *7.  Although little more is required of representative plaintiffs than to "serve the interests of the class and ensure that they are not simply lending their names to a suit controlled entirely by the attorneys for the benefit of counsel," *Lewis v. Alert Ambulette Service Corp.*, No. 11-CV-442, 2012 WL 170049, *12 (E.D.N.Y., Jan. 19, 2012), among other factors that may be considered are the class representatives' credibility, *Attenborough v. Const. and General Bldg. Laborers Local 79*, 238 F.R.D. 82, 100-01 (S.D.N.Y. 2006), and the availability of "unique defenses which threaten to become the focus of the litigation." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d. Cir. 1990).

52866.1

In the instant case, the credibility of the putative Class Representatives is seriously impaired.  At least 10 of them (Zeng Guan Li, Tian Bao Liang, Guan Ming Lin, Wan Rong Lin, Salomon Mendoza, Kong Shun Ni, Gen Liang Shi, Sidronio Solano, Zhi Ping Wang, and Pei Guang Zhuo) have declared under penalty of perjury that they never received spread pay.  But defendants have proved that they did.  *See* Sharon Rose Aff't ¶¶ 8, 9.  This taint surely will have a seriously negative impact on their ability to represent absent class members adequately.  *See Attenborough,* 238 F.R.D. at 101-02, *citing Kaplan v Pomerantz,* 132 F.R.D. 504, 510 (N.D.Ill. 1990), for the proposition that "[a] plaintiff with credibiilty problems . .  does have interests antagonistic to the class."

More critically, each putative Class Representative's wage statement penalty and WTPA notice penalty claim is subject to a complete defense that disqualifies him as an adequate representative of the purported wage statement and WTPA penalty class members.  In *Dauphin v. Chestnut Ridge Transp. Inc.,* No. 06 Civ. 2730, 2009 WL 2596636 (S.D.N.Y. Aug. 20, 2009), the named plaintiffs in an overtime pay case sought Rule 23 certification of their NYLL claims. There was evidence that named plaintiffs were subject to the federal "motor carrier" exemption incorporated in the NYLL.  *See* 2009 WL 2596636 at *2 n.3.  The court found that  the motor carrier exemption constituted a "unique defense that threatens to become the focus of this litigation.  If a class were certified for plaintiffs' state labor law claim, defendants would inevitably focus on [the applicability of the motor carrier exemption to] *these plaintiffs* as a means of defeating the claim.  That would prejudice absent class members who may have stronger state labor law claims because they did not engage in" the activities that trigger the exemption. *Id.* at *3 (emphasis in original).  For this reason, the court denied certification on the ground that the plaintiffs were not adequate class representatives.

52866.1

Similarly, in the instant action, the putative Class Representatives' wage statement penalty claim is subject to the defense provided in NYLL § 198[1-d].[6] The second paragraph of § 198[1-d] provides, in pertinent part,

> In any action or administrative proceeding to recover damages for violation of subdivision three of section one hundred ninety-five of this article, it shall be an affirmative defense that (i) the employer made complete and timely payment of all wages due pursuant to this article or articles nineteen or nineteen-A of this chapter to the employee who was not provided statements as required by subdivision three of section one hundred ninety-five of this article or (ii) the employer reasonably believed in good faith that it was not required to provide the employee with statements pursuant to subdivision one [*sic –* probably should be three] of section one hundred ninety-five of this article.

As shown below, this defense is available as against every putative Class Representative, just as the motor carrier exemption was available against the representative plaintiffs in *Dauphin.*

The only evidence plaintiffs submit in support of certification of their wage statement penalty claim is a single wage statement that they claim is imperfect because it does not contain (1) the employer's trade name, address, and telephone number, or (2) the amount of tip credit taken; they contend that this wage statement is typical of the statements defendants provide to all

---

[6]    NYLL § 198[1-b] provides a defense to WTPA notice penalty actions which is identical with the defense that NYLL § 198[1-d] provides to wage statement penalty actions. The second paragraph of § 198[1-b] provides, in pertinent part,

> In any action or administrative proceeding to recover damages for violation of paragraph (d) [*sic –* probably should be (a)] of subdivision one of section one hundred ninety-five of this article, it shall be an affirmative defense that (i) the employer made complete and timely payment of all wages due pursuant to this article or article nineteen or article nineteen-A of this chapter to the employee who was not provided notice as required by subdivision one of section one hundred ninety-five of this article or (ii) the employer reasonably believed in good faith that it was not required to provide the employee with notice pursuant to subdivision one of section one hundred ninety-five of this article.

In light of the identity of this defense with the defense provided by § 198[1-d] to wage statement penalty actions, defendants respectfully submit that their discussion of the § 198[1-d] defense to wage statement penalty claims should be deemed to apply equally to their defense under § 198[1-b] to plaintiffs' WTPA notice penalty claims.

52866.1

non-exempt employees. Pltf. Mem. at 4-5 & ex. A. This, plaintiffs assert, means that defendants' wage statements fail to conform to the requirements of NYLL § 195[3] and therefore entitles all class members (*i.e.,* all of defendants' non-exempt employees) whose wage statements were supposedly likewise deficient to the penalty of $100 per employee per week (subject to a cap of $2,500 per employee) provided for in NYLL §198[1-d].

However, § 198[1-d] provides a defense to defendants with respect each of the putative Class Representatives, and at the very least would be an issue to be litigated at the trial. For example, Zeng Guan Li's declaration states that he was paid $7.50 per hour, Kong Shun Ni's states that he was paid $7.25 - $7.50 per hour, and Salomon Mendoza's states that he was paid $12 per hour in his most recent position (sushi chef). Thus, there would be no reason for defendants to take a tip credit allowance from their wages, and so (a) the absence of employer business identification information or tip allowance information on their wage statements had no impact on their wages, and (b) there is every reason to believe that defendants will "inevitably focus on" the availability of the § 198[1-d] defense to their wage statement penalty claims by proving that defendants "made complete and timely payment of all wages due" to these three putative Class Representatives.

It is also inevitable that defendants will focus on the § 198[1-d] defense for the other 11 putative Class Representatives, each of whom declares that he was a delivery worker or a busboy, and whose wage rate was either $5.65 (the wage rate for tipped service workers such as restaurant delivery workers; *see* 12 NYCRR 146-1.3(a)) or $5.00 (the wage rate for tipped food service workers such as busboys; *see* 12 NYCRR 146-1.3(b)). As demonstrated above, *supra* at 15-17, defendants will contend that each of these 11 was paid all of the spread of hours money he earned.

25

In turn, this leaves only the tip credit allowance at issue for these 11.  The fact that there is no dispute that the putative Class Representatives actually received tips in the amount of the tip credit defendants took, coupled with the parallel fact that there is no legitimate dispute that the wages defendants paid to these 11 individuals conformed to the requirements of 12 NYCRR 146-1.3 since January 1, 2011, and 12 NYCRR 137-1.4 and -1.5 before January 1, 2011, means that at least arguably, each was paid "all wages due" him under the NYLL.

There does remain the issue whether the "complete and timely payment of all wages due" defense would be available as to these 11 if the tip credit allowances defendants took were deemed to be invalid.  There are several reasons why this issue creates a real threat that the focus of the litigation will be on this part of the defense rather than on any common issues.  This Court has previously ruled that the validity of the tip credit allowance defendants took may well turn on each plaintiffs' facility with the English language, *see Guan Ming Lin v. Benihana National Corp.,* 275 F.R.D. at 177; indeed, this was a reason for the Court's declining to certify a Rule 23 class on the tip credit issue on commonality grounds.  *Id.*  If the putative Class Representatives have to litigate the issue of their own ability to speak English in order to defeat defendants' § 198[1-d] defense, there remains the palpable likelihood that this issue "would prejudice absent class members who may have stronger state labor law claims" in this case, to quote *Dauphin.*

Moreover, it is not at all clear that the § 198[1-d] defense would be unavailable to defendants even if the tip credit they took against the putative Class Representatives' wages were eventually disallowed because, supposedly, they provided notice of the credit in the wrong language.  Defendants still will have paid the full amount of money due to the 11 tipped Class Representatives who are not proficient in English, and the Class Representatives still will have received all the tips necessary to entitle defendants to the credit upon providing proper notice.

52866.1

That the defendants might have to pay the disallowed tip credits as damages on top of wages previously paid (and, perhaps liquidated damages, as well) should not be deemed to strip them of their § 198[1-d] defense to the wage statement penalty if they previously paid the proper amount of wages.  Each Class Representative still will have received all the money he was due under the NYLL.

In sum, defendants' "unique defense" to the putative Class Representatives' wage statement penalty claim under § 198[1-d], as well as these Representatives' credibility problems, necessarily mean that these putative Representatives cannot meet the "adequacy" requirement of Rule 23(a)(4), certainly not with respect to the wage statement penalty claim or (*see* n.6, *supra* at 24) their WTPA notice penalty claim.

**D.    Plaintiffs Fail to Pass the Rule 23(b)(3) Predominance Test Because Individual Questions Predominate over Common Questions**

Rule 23(b)(3) provides that even when the requirements of Rule 23(a) have been met, a class may be certified only if the court "finds" that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy . . . ."  The predominance inquiry is a related but "far more demanding" criterion than the commonality requirement.  *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623-24 (1997). This requirement

> is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.' *Myers,* 624 F.3d at 547. . . . [I]f adjudicating the class representatives' claims 'will effectively establish a right of recovery for all other class members without the need to inquire into each individual's circumstances' or 'if the same evidence will permit each class member to make a prima face showing,' then the test is met; but if 'the evidence needed to make a prima facie showing on a given question requires

27

52866.1

members of the proposed class to present evidence that varies from member to
member, then it is an individual question.'  1 Joseph M. McLaughlin,
[*McLaughlin on Class Actions*], § 5:23.

*Morangelli v. Chemed Corp.,* 275 F.R.D. 99, 104 (E.D.N.Y. 2011).

Thus, where an available defense would entail individualized proof such that the fact-finder "may have to determine defendants' liability" on an individual-by-individual basis, "plaintiffs' state law claim is not amenable to 'adjudication by representation.'"  *Dauphin,* 2009 WL 2596636, *3.  Common questions do not predominate over individual ones when "the fact-finder would have to sift through the entire class to identify" the members whose claims are meritorious, "a process that would require evidence specific to each plaintiff.  Plaintiff's state labor law claim, therefore, involves at least as much individualized proof as generalized proof, and class-wide questions of law and fact do not predominate over individual questions of law and fact."  *Id.* at *4.

This reasoning applies both to the spread of hours claims in this case, as well as plaintiffs' claims for the wage statement and WTPA notice penalties.  Regarding the spread of hours claim, the fact that 10 of the 11 putative Class Representatives who claim they never got spread pay did, in fact, receive it strongly suggests that all of the class members, too, received spread pay, at least to an extent which suggests that defendants will be sure to focus on whether each class member did or did not receive spread pay.  This probability means that there is no basis for the Court to find that common questions will predominate over individual ones in regard to plaintiffs' spread pay claim, and provides strong support for the opposite finding; that is, that individual questions will predominate over common ones.

Similarly, the NYLL § 198[1-d] defense to wage statement penalty claims virtually assures that either (1) individualized claims will predominate over common ones in regard to

wage statement penalty claims, or else (2) the class will be whittled down to that of tipped employees who did not receive notice that defendants would take a tip credit allowance against their statutory minimum wage, a class that this Court has already held is not subject to Rule 23 certification. *See Guan Ming Lin v. Benihana National Corp.,* 275 F.R.D. at 177-78.

This is because even if defendants' wage statements did not include the business identification information that NYLL § 198[1][a] required, that omission would not result in any non-exempt employee's not receiving "complete and timely payment of all wages due." Thus, all non-exempt employees (that is, all class members) who were not subject to the tip credit allowance and whose wage was higher than the statutory minimum such that they were not eligible for spread pay would have suffered no diminution in the amount of wages due them, and defendants' defense would be established, excluding them from the class.

This elimination would leave a class consisting of (a) minimum wage non-exempt employees who worked shifts that ended more than ten hours after they began but did not receive spread pay; and (b) minimum-wage tipped employees as to whom defendants took the tip credit. As for the first group, we have already demonstrated that if there were any such employees, it was not the result of a common corporate practice or policy and none of the putative Class Representatives is typical of such a class anyway, so it is hard to imagine how such a group could be identified without dozens if not hundreds of individualized inquiries that would surely predominate over any common questions.

And as for the second group – tipped employees as to whom defendants took a tip credit allowance against their statutory minimum wage, this Court has already held that it may be defined only by making individualized inquiries into their English language proficiency, *see*

52866.1

*Guan Ming Lin v. Benihana National Corp.*, 275 F.R.D. at 177-78, which by definition means

that individualized questions will predominate over common questions.

In sum, the defenses to wage statement and WTPA notice penalty claims provided by

NYLL §§ 198[1-d], [1-b] and the fact that these defenses will be available to defendants with

regard to all class members, and not just the putative Class Representatives mean that it is

inconceivable that individualized questions will not predominate over common questions.[7]

### E.  The Proposed Class Is Not Ascertainable Because It Is Not Possible To Identify Who Would Belong to the Class Plaintiffs Seek to Certify

The "ascertainability requirement" obligates the proponent of a class to show that the

proposed class is sufficiently identifiable that the court and the parties can determine who is in

the class and, ultimately, bound by the ruling in the case. *Gardner, supra,* 2009 WL 7311383 at

*7. When the definition of the class is intertwined with the merits of the class members' claims,

such that the question whether someone is a class member requires a mini-hearing into the merits

of each plaintiff's or class member's case, the class is not ascertainable. *Id.*

That is precisely the case here.  The only way to determine whether an individual has a

claim for spread pay, and therefore should become part of a purported class of non-exempt

employees who should have received spread pay but did not, would be to conduct an

---

[7]   In the "predominance" portion of their argument, plaintiffs state the proposition, with which defendants cannot argue, of course, that the presence of "individualized damage issues" does not defeat certification, at least not where there are liability issues common to the class. *See* Pltf. Mem. at 19; *see also, Flores v. Anjost Corp.*, No. 11 Civ. 1531, 2012 WL 2339267, *40-*41 (S.D.N.Y. June 19, 2012).  However, the availability of the §§ 198[1-b], [1-d] defenses, as well as the question whether the putative Class Representatives and class members were actually paid spread pay, are not damages issues, but rather go to other issues, such as whether putative Class Representatives have claims that are typical of those of the class and whether the litigation of such defenses is likely to predominate over litigation of questions common to the class, whatever such questions might be or vice versa.  Accordingly, neither the proposition plaintiffs cite nor *Flores* militate against certification in this case.

individualized analysis that (a) compares the employee's time records for a particular work week with the payroll records for that week, (b) determines whether the worker's rate of pay was small enough to qualify for spread pay, (c) reviews the time records to determine whether the employee worked enough time to qualify for spread pay, and (d) examines the payroll records to determine whether the worker actually did or did not receive such pay.  The necessity of such inquiries shows that plaintiffs' spread pay claims are not subject to class certification because no one can tell who belongs in the class or not.

This is true, as well, for plaintiffs' WTPA notice penalty claim.  In order to determine whether someone belongs to a class of workers whose WTPA notices were "improper," it would be necessary to review that putative class member's WTPA notice to see whether it is flawed and, if so, what the flaw is.  Such an exercise does not result in an ascertainable group of people that can be identified by any common characteristic.

And this is true for plaintiffs' wage statement penalty claim, too.  Although plaintiffs appear to have shown that all non-exempt employees received wage statements that do not have the requisite employer identification information, individualized assessments will be necessary to determine whether the NYLL § 198[1-d] defense has been established; *i.e.*, whether the putative class member received "complete and timely payment of all wages due."  Moreover, the outcome of this exercise likely will depend upon whether the non-exempt putative class member was a tipped employee or not a tipped employee, and among tipped employees it may (or, as defendants contend, may not) turn as well upon whether the putative class member speaks English or not.

There is no cohesive quality to any class that would embrace any one of the three claims for which plaintiffs seek certification this motion that would enable the court to ascertain who

52866.1

does or does not belong in any such class.  As such, the motion should be denied for failure of ascertainability, as well as on the other grounds enumerated herein.

## POINT II

### THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE WTPA AND WAGE STATEMENT PENALTY CLAIMS BECAUSE THEY RAISE NOVEL ISSUES OF STATE LAW THAT SHOULD BE LEFT TO THE STATE COURTS

The WTPA has been in effect for just under 17 months.  No court has yet decided any of the many questions under the WTPA that plaintiffs' wage statement and WTPA notice penalty claims raise; *e.g.,* (1) whether employees who received "improper" WTPA notices prior to February 1, 2012 and who were hired before the WTPA went into effect may bring a private lawsuit to recover the penalty created by § 198[1-b]; (2) whether the defenses created by §§ 198[1-b], [1-d] are available where an "employer made complete and timely payment of all wages" that would have been due to a tipped employee if the tip credit allowance was properly taken, but the tip credit is later disallowed because of deficiencies in complying with, for example, FLSA notice procedures; (3) whether the "Employee's Pay Rate" in section 3 of the WTPA notice form for a tipped employee should be the statutory minimum of $7.25 or the amount provided in 12 NYCRR 146-1.3 (that is, $5.00 or $5.65, depending on whether the worker is a service worker or a food service worker); and (4) whether the court has discretion, where the employer has achieved substantial but not perfect compliance with the § 195 requirements for WTPA notices and wage statements, to award a penalty of less than the full amount of $2,500 or even to award no penalty at all.  Nor have defendants been able to locate any administrative material from the New York State Department of Labor that addresses any of these issues or the extent to which the WTPA notice and wage statement requirements of § 195 will be construed literally in penalty cases.  Lalli Aff. ¶ 5.

32

Since these issues arise under a new State statute that addresses payment of wages matters that have solely local applicability, this Court should decline to exercise supplemental jurisdiction over the plaintiffs' wage statement and WTPA notice penalty claims pursuant to 28 U.S.C. § 1367(c) in the interest of comity.

Section 1367(c) provides, "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if (1) the claim raises a novel or complex issue of State law." *See Fiacco v. Christie's Inc.,* No. 00-CV-526, 2002 WL 257693, *3 (N.D.N.Y. Feb. 21, 2002) (declining to exercise supplemental jurisdiction over the scope and extent of individual liability on an aiding and abetting claim arising under Executive Law § 296(6), "[g]iven the unsettled nature of the state of the law in New York regarding § 296(6)"); *Donlon v. Bd. of Ed. of Greece Central School Dist.,* No. 06-CV-6027, 2007 WL 4553932, *5-*6 (W.D.N.Y., Dec. 20, 2007) (same).

Section 1367(c)(1) "reflect[s] concerns about the relationship between state and federal courts. . . . 'Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.' When a pendant state claim turns on novel or unresolved questions of state law, . . . principles of federalism and comity may dictate that these questions be left for decision by the state courts." *Seabrook v. Jacobson,* 153 F.3d 70, 71-72 (2d Cir. 1998) (internal citations omitted).

For example, in *Bray v. City of New York,* 356 F.Supp.2d 277 (S.D.N.Y. 2004), the question was whether bicyclists should be enjoined from participating in mass rides without a parade permit; this, in turn, depended upon whether the mass rides were a "parade or procession" within the meaning of the parade permit local law. No prior state court decision had previously

52866.1

interpreted the words "parade or procession" in the context of the New York City law at issue. The court found that the case "presented novel questions of state and local law, which militate strongly against exercising supplemental jurisdiction." *Id. a*t 283-84. For this reason, and also because the state law claims would predominate over the federal law claim in the action, *id.* at 284-85, the court declined under 28 U.S.C. § 1367(c)(1) to exercise supplemental jurisdiction, noting that "comity dictates that this Court avoid entanglements in the enforcement of local laws involving novel questions. Judicial restraint is the prudent course where the path through state and local law is not illumined." *Id.* at 287. *See also, Spiegel v. Schulman,* No. 03-CV-5088, 2010 WL 3619577, *1 (E.D.N.Y. 2010) (declining under 28 U.S.C. § 1367(c)(1) to exercise supplemental jurisdiction over state law disability discrimination claim because neither the New York Court of Appeals nor any intermediate New York appellate court had addressed the question of whether obesity is a disability within the meaning of the state disability discrimination law).

The instant case, as noted above, raises a number of questions under a new statute that no state court nor even the New York State Department of Labor has addressed, questions that clearly will predominate over the federal FLSA claims that the named plaintiffs and opt-ins assert. We respectfully submit that the state courts should be the body that decides, in the first instance, such questions as the degree, if any, to which a court has discretion to decide that an employer who fails merely to include the employer's trade name, address, and telephone number on its wage statements should be equally as liable for the $2,500 per employee penalty as the employer who pays his employees in cash, cheats them of their wages, and fails to provide any wage statement at all.

52866.1

In these circumstances, the Court should decline to exercise supplemental jurisdiction over the plaintiffs' wage statement claim pursuant to 28 U.S.C. § 1367(c)(1), because that claim raises novel questions of state law which, in the interest of comity, should be decided in the first instance by the courts of the State of New York.

## CONCLUSION

The plaintiffs' motion for certification of a Rule 23 class should be denied in its entirety or, in the alternative, the motion should be denied as to plaintiffs' spread pay claims and the Court should decline to exercise supplemental jurisdiction over plaintiffs' WTPA notice and wage statement penalty claims.[8]

Respectfully submitted,

BOND, SCHOENECK & KING, PLLC

By: _____
         Dennis A. Lalli (DL-0575)

330 Madison Avenue, 29th Floor
New York, New York 10017
(646) 253-2300

Attorneys for the Defendants

Of Counsel:   Elitsa Yotkova (EY-8255)

---

[8]   Although defendants disagree that the notice plaintiffs propose sending to all class members is proper, we respectfully suggest that it is premature to address what the notice should say until the Court has disposed of the instant motion for Rule 23 certification.  If any class is certified, only then will it make sense to consider what the notice should say.  The Court should direct the parties to meet and confer as to the contents of the notice, if but only if the Court certifies a Rule 23 class.

52866.1