UNITED STATES DISTRICT COURT                    **(ECF)**
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - :
GUAN MING LIN, et al.,                  : 10 Civ. 1335 (RA) (JCF)
                                        :
            Plaintiffs,                 :       REPORT AND
                                        :       <u>RECOMMENDATION</u>
     - against -                        :
                                        :
BENIHANA NEW YORK CORP., et al.,        :
                                        :
            Defendants.                 :
- - - - - - - - - - - - - - - - - - - :
LONG HUA ZHANG, et al.,                 :
                                        :
            Plaintiffs,                 :
                                        :
     - against -                        :
                                        :
BENIHANA INC., et al.,                  :
                                        :
            Defendants.                 :
- - - - - - - - - - - - - - - - - - - :
MARTIN GARCIA, et al.,                  :
                                        :
            Plaintiffs,                 :
                                        :
     - against -                        :
                                        :
BENIHANA INC., et al.,                  :
                                        :
            Defendants.                 :
- - - - - - - - - - - - - - - - - - - :
TO THE HONORABLE RONNIE ABRAMS, U.S.D.J.:

     The plaintiffs bring this class and collective action alleging

violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C.

§ 201 <u>et</u> <u>seq.</u>, and New York Labor Law ("NYLL").  The plaintiffs now

move for (1) certification of a class action pursuant to Rule

23(b)(3) of the Federal Rules of Civil Procedure, on behalf of all

non-exempt employees employed by the defendants ("Class Members") from February 18, 2004, until the present (the "Class Period") and designation of fourteen named plaintiffs as class representatives; (2) appointment of Lee Litigation Group, PLLC, as class counsel; (3) issuance of notice to Class Members in the form submitted; (4) production of the names, last known mailing addresses, all telephone numbers, positions, dates of employment, and weekly hours worked for all Class Members; and (5) access by plaintiffs' counsel during regular business hours to each of the defendants' restaurants in New York City to post the Court-facilitated notice at a location that is reasonably expected to be viewed by prospective Class Members.   For the reasons that follow, I recommend that the plaintiffs' motion be granted in part and denied in part.

<u>Background</u>

This is the plaintiffs' third attempt at seeking certification of a class action.  Much of the background to this motion was laid out in my prior Report and Recommendations dated November 9, 2010, and April 20, 2011, and will only be summarized briefly here.  <u>Guan Ming Lin v. Benihana National Corp.</u>, 755 F. Supp. 2d 504, 507-08 (S.D.N.Y. 2010); <u>Guan Ming Lin v. Benihana National Corp.</u>, 275 F.R.D. 165, 170 (S.D.N.Y. 2011).

On February 18, 2010, plaintiffs Guan Ming Lin and Zeng Guan

2

Li (the "initial plaintiffs") filed this lawsuit against the owners and operators of a chain of Japanese restaurants in New York City (collectively the "Haru restaurants" or "defendants") seeking unpaid wages under the FLSA and NYLL.   In a Report and Recommendation dated April 20, 2011, I recommended certification of a collective action pursuant to 29 U.S.C. § 216(b) of all tipped employees of the defendants' restaurants from February 19, 2007, through the present, including all delivery persons, but denial of the plaintiffs' class action motion under Rule 23 of the Federal Rules of Civil Procedure.   <u>Guan Ming Lin</u>, 275 F.R.D. at 179.   I found that each of the Haru restaurants operated as a common enterprise, and collective certification notices were mailed out to all prospective collective action claimants who were employed at each of the Haru restaurants with respect to off-the-clock work and tip credit claims.   Thirty-four opt-in claimants filed their consents to sue after receipt of the collective certification notice.   (Memorandum of Law in Support of Plaintiffs' Motion for Class Certification Pursuant to Fed. R. Civ. P. 23 ("Pl. Memo.") at 1).

On January 24, 2012, the initial plaintiffs' action was consolidated with actions filed by similarly situated individuals against the Haru restaurants, each alleging, among other claims, violations of NYLL for inadequate payments of spread of hours

wages, inadequate wage statements, and inadequate wage and hour notices.

A.    <u>The Plaintiffs' Claims</u>

The plaintiffs seek certification of all non-exempt employees employed by the defendants with respect to the following claims: (1) the defendants did not pay spread of hours wages as required by N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12, § 142-2.4; (2) the defendants did not provide wage statements that conform to requirements set forth in NYLL § 195(3), as amended by the New York Wage Theft Prevention Act (the "WTPA"), 2010 N.Y. Sess. Laws ch. 564, § 3; and (3) the defendants did not provide proper wage and hour notices, as required by NYLL § 195(1)(a).

1.    <u>Spread of Hours Wages</u>

The "spread of hours" provision in the New York regulations requires an additional hour's pay at the "basic minimum hourly wage rate" for any day where the employee works in excess of ten hours. 12 NYCRR § 142-2.4. Before January 1, 2011, by its plain language, section 142-2.4(a) required spread of hours wages only for employees who were paid minimum wage. <u>See</u> <u>Espinosa v. Delgado Travel Agency, Inc.</u>, No. 05 Civ. 6917, 2007 WL 656271, at *2 (S.D.N.Y. March 2, 2007). Effective January 1, 2011, employers are required to pay spread of hours wages for "all employees in restaurants and all-year hotels, regardless of a given employee's

regular rate of pay."  12 NYCRR § 146-1.6(d).

### 2.  Wage and Hour Notices

The WTPA, which became effective on April 9, 2011, requires every employer to provide its employees a notice "at the time of hiring," and "on or before February first of each subsequent year of the employee's employment."  NYLL § 195(1)(a).  The notice must contain, among other things, the rate of pay, allowances, the regular pay day, the name of the employer, the physical address of the employer's main office, and a mailing address and telephone number for the employer.  NYLL § 195(1)(a).  The notice must be provided in writing in English or the language identified by each employee as his or her primary language.  NYLL § 195(1)(a).

### 3.  Wage Statements

The WTPA also requires that all wage statements include, among other things, the employee's rate of pay, deductions, allowances, and overtime rate of pay.  NYLL § 195(3).

### Discussion

For the reasons set forth below, the plaintiffs' proposed class of all non-exempt employees employed by the Haru restaurants should be certified for the claim that they did not receive wage statements in compliance with NYLL § 195(3).  A subclass of all non-exempt employees employed by the defendants at minimum wage from February 18, 2004, until June 25, 2009, should also be

certified for the claim that they did not receive proper spread of hours wages.[1]

A.   <u>Legal Standard</u>

1.   <u>Rule 23</u>

In order to obtain class certification under Rule 23 of the Federal Rules of Civil Procedure, the proponent bears the burden of proving the four threshold requirements of Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately

---

[1] The defendants argue that the claims asserted here were not alleged in the initial complaint, but first presented in <u>Long Hua Zhang v. Benihana, Inc.</u>, 11 Civ. 8567, filed on November 23, 2011, before it was consolidated with the initial complaint in this action. Accordingly, they argue, the class period should go back six years from November 23, 2011, not from the date of the filing of the initial complaint. (Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification Pursuant to Fed. R. Civ. P. 23 ("Def. Memo.") at 1 n.1). However, the defendants fail to cite any authority for such a proposition. In the Second Circuit, when two or more actions are consolidated into one, courts have granted a class period from the date the initial complaint was filed. <u>See</u> <u>Winfield v. Citibank</u>, 843 F. Supp. 2d 397, 410-11 (S.D.N.Y. 2012); <u>Thompson v. World Alliance Financial Corp.</u>, No. 08 CV 4951, 2010 WL 3394188, at *7 (E.D.N.Y. Aug. 20, 2010) (holding that three years from date initial complaint was filed is appropriate for conditional certification after two cases were consolidated). The defendants are free to challenge the timeliness of individual plaintiffs' claims in the future.

protect the interest of the class.

Fed. R. Civ. P. 23(a).  These elements are commonly referred to as "numerosity, commonality, typicality and adequacy."  <u>Teamsters Local 445 Freight Division Pension Fund v. Bombardier Inc.</u>, 546 F.3d 196, 201-02 (2d Cir. 2008).  Rule 23(a) also implicitly requires that the class members be identifiable and ascertainable. <u>Jankowski v. Castaldi</u>, No. 01 CV 0164, 2006 WL 118973, at *5 (E.D.N.Y. Jan. 13, 2006).

In addition to satisfying the Rule 23(a) prerequisites, the class proponent must qualify the proposed class under one of the three Rule 23(b) categories.  <u>Brown v. Kelly</u>, 609 F.3d 467, 476 (2d Cir. 2010).  Here, the plaintiffs rely on subsection (b)(3), under which the proponent must show (1) that "the question of law or fact common to class members predominate over any questions affecting only individual members," and (2) that "a class litigation is superior to other available methods for fairly and efficiently adjudicating the controversy."  <u>Id.</u> (citing Fed. R. Civ. P. 23(b)(3)).

2.  <u>Burden of Proof</u>

A court may certify a class only after conducting a "rigorous analysis" to determine whether all the requirements of Rule 23 have been met.  <u>General Telephone Co. of Southwest v. Falcon</u>, 457 U.S. 147, 160-61 (1982).  In the Second Circuit, the moving party "bears

the burden of establishing, by a preponderance of the evidence, that each of Rule 23's requirements has been meet." <u>Myers v. Hertz Corp.</u>, 624 F.3d 537, 547 (2d Cir. 2010).

The same standard applies whether the issue is independent of or overlaps with a merits issue in the case. <u>Id.</u> at 548; <u>see also In re Initial Public Offerings Securities Litigation</u>, 471 F.3d 24, 41 (2d Cir. 2006). This requires a court to resolve the relevant factual disputes, even if they overlap with issues that go to the merits of the case. <u>Myers</u>, 624 F.3d at 548. However, "[a] motion for class certification should not . . . become a mini-trial on the merits." <u>Lewis Tree Service, Inc. v. Lucent Technologies, Inc.</u>, 211 F.R.D. 228, 231 (S.D.N.Y. 2002). "The dispositive question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." <u>Kowalski v. YellowPages.com, LLC</u>, No. 10 Civ. 7318, 2012 WL 1097350, at *12 (S.D.N.Y. March 31, 2012) (internal quotation marks omitted).

"The Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction, and it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." <u>Espinoza v. 953 Associates LLC</u>, 280 F.R.D. 113, 124 (S.D.N.Y. 2011) (internal quotation marks omitted).

B.   Requirements of Rule 23

1.   Numerosity

Generally, numerosity is presumed when the proposed class contains forty or more members.  Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 482 (2d Cir. 1995).  "Although a plaintiff need not present a precise calculation of the number of class members and it is permissible for the court to rely on reasonable inferences drawn from available facts, the movant must show some evidence of or reasonably estimate the number of class members."  Noble v. 93 University Place Corp., 224 F.R.D. 330, 338 (S.D.N.Y. 2004) (internal quotation marks and footnotes omitted).

The proposed class here meets this threshold.  It includes all of the defendants' non-exempt employees employed since February 18, 2004.  The list of non-exempt employees to whom "opt-in" notice was sent included 1,386 names.  (Affirmation of Dennis A. Lalli dated Sept. 4, 2011 ("Lalli Aff."), ¶ 3).  The defendants argue that the numerosity requirement is not met because only 34 opt-in claimants filed consents to sue after receiving notice of the pendency of the action, less than 2.5% of recipients of the notice.  (Def. Memo. at 10).  The defendants rely on Thiebes v. Wal-Mart Store, Inc., No. CIV. 98-802, 2002 WL 479840 (D. Ore. Jan. 9, 2002), for the proposition that joinder is not impracticable because of the small percentage of opt-in plaintiffs.

However, the courts in the Second Circuit have rejected
Thiebes and continue to assess the numerosity requirement based on
the size of the proposed class rather than the number of opt-in
plaintiffs. See Niemiec v. Ann Bendick Realty, No. 04 CV 897, 2007
WL 5157027, at *6 (E.D.N.Y. April 23, 2008) ("Thiebes is inapposite
as there are other cases within this circuit supporting a finding
of numerosity despite a low number of opt-in plaintiffs when
certain mitigating factors are present."). The defendants argue
that, unlike Niemec, there are no "mitigating factors" present in
this case. But, like the absent members in Niemec, the absent
members here "[speak] poor English, [are] unfamiliar with the
American legal system," and may be "undocumented immigrants afraid
of exposing their status" and "afraid of losing their jobs." Id.
at *6-7. The fact that there has been no evidence of "fear of
reprisal," as there was in Niemec, does not neutralize all of the
other factors present here. Therefore, the numerosity requirement
is satisfied.

2.   Commonality and Typicality

Rule 23(a) requires that there be "questions of law or fact
common to the class," and the case "involve a class of plaintiffs
whose claims or defenses of the representative parties are typical
of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(2)-
(3). "As a practical matter, the two requirements tend to merge in

10

the Second Circuit's class certification inquiry."
Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 370
(S.D.N.Y. 2007).  Under this inquiry, the plaintiffs must

> show that they raise questions of fact or law, arising
> out of a single course of conduct or set of events, that
> are common to all putative class members and that their
> individual claims and circumstances are sufficiently
> similar to those of the absent class members so as to
> ensure that the named plaintiffs will press the claims of
> all class members.

Duling v. Gristede's Operating Corp., 267 F.R.D. 86, 97 (S.D.N.Y.
2010).  Generally, the plaintiffs must produce "some quantum of
evidence . . . tending to show the existence of a class of persons
affected by a company-wide policy or practice."  Eng-Hatcher v.
Sprint Nextel Corp., No. 07 Civ. 7350, 2009 WL 7311383, at *6
(S.D.N.Y. Nov. 13, 2009) (internal quotation marks omitted).

When courts can discern a company-wide wage policy that
injured the proposed class, "claims by workers that their employers
have unlawfully denied them wages to which they were legally
entitled have repeatedly been held to meet the commonality
prerequisite for class certification." Espinoza, 280 F.R.D. at 127
& n.90 (collecting cases); see, e.g., Youngblood v. Family Dollar
Stores, Inc., No. 09 Civ. 3176, 2011 WL 4597555, at *4 (S.D.N.Y.
Oct. 4, 2011).

A district court "is not bound by the class definition
proposed in the complaint and should not dismiss the action simply

11

because the complaint seeks to define the class too broadly." Lundquist v. Security Pacific Automotive Financial Services Corp., 993 F.2d 11, 14 (2d Cir. 1993) (internal quotation marks omitted). Thus, a court has the discretion to create subclasses it deems appropriate. Fed. R. Civ. P. 23(c)(5); see also Lundquist, 993 F.2d at 14.

i.   Spread of Hours Wages

The plaintiffs fail to demonstrate that the defendants maintained a company-wide policy of failing to pay spread of hours wage during the entire Class Period.

To support its claim, the plaintiffs provide affidavits of its class representatives, ten of which include the following paragraph or one substantially similar: "During my employment for Defendants, I was not properly paid a spread of hour wage when my work day exceeded ten hours until January 2011.  I personally observed that other employees of Defendants similarly were not properly paid their spread of hours wage."[2]   However, the plaintiffs fail to

---

[2] Declaration of Zhi Ping Wang dated July 5, 2012 ("Wang Decl."), ¶ 4; Declaration of Zeng Guan Li date July 9, 2012 ("Li Decl."), ¶ 3; Declaration of Wan Rong Lin dated July 3, 2012 ("W. Lin Decl."), ¶ 4; Declaration of Valentin Vivar dated July 5, 2012 ("Vivar Decl."), ¶ 4; Declaration of Tian Bao Liang dated July 3, 2012 ("Liang Decl."), ¶ 4; Declaration of Salomon Mendoza dated July 5, 2012 ("Mendoza Decl."), ¶ 4; Declaration of Pei Guang Zhuo dated July 3, 2012 ("Zhuo Decl."), ¶ 4; Declaration of Luis Sidronio Solano dated July 7, 2012 ("Solano Decl."), ¶ 4; Declaration of Gen Lian Shi dated July 5, 2012 ("Shi Decl."), ¶ 4;

provide any corroborating evidence to show that these plaintiffs were entitled to more spread of hours payments than what they received.

Rather, the plaintiffs rely heavily on the deposition testimony of Seth Rose, the defendants' Vice President of Operations, to show that the defendants maintained a policy of not paying spread of hours wages. (Pl. Memo. at 9-10). They cite Mr. Rose's response, "I don't know," when asked if the defendants paid one of the plaintiffs, Guan Ming Lin, spread of hours wages to which he was entitled. (Pl. Memo. at 9-10; Deposition of Seth Rose dated Dec. 9, 2010 ("Seth Rose Dep.") at 267-69). However, this response illustrates no more than a lack of familiarity with payroll details. Further, Mr. Rose was not called to testify about payments of spread of hours wages, because no such claim was even alleged in the complaint at the time of the deposition.

The only statistical evidence the plaintiffs provide is based on wage statements of two individuals. First, the plaintiffs allege that Guan Ming Lin received spread of hours payments of $28.60 and $21.45, when he allegedly was entitled to receive $29.00 and $36.25, respectively. (Pl. Memo. at 10). Second, Lye Ming Aw received a spread of hours payment of $18.00, which is not

---

Declaration of Kong Shun Ni dated July 2, 2012 ("Ni Decl."), ¶ 3.

divisible by $7.25 –- the spread of hours rate during the relevant time period.  (Reply Memorandum of Law in Support of Plaintiffs' Motion for Class Certification Pursuant to Fed. R. Civ. P. 23 ("Reply") at 8-9).  However, this evidence, combined with the carbon-copied paragraphs in the declarations, hardly constitutes the "quantum of evidence" necessary to demonstrate "a company-wide policy or practice."  See Eng-Hatcher, 2009 WL 7311383, at *6.

In response, the defendants provide the affidavit of Sharon Rose, the Tax Director of the corporate parent of the Haru restaurants.  According to Ms. Rose, who has been overseeing the company's payroll practices for over 12 years, the Haru restaurants pay their non-exempt employees spread of hours wages when required.  (Affidavit of Sharon Rose dated Sept. 4, 2012 ("Sharon Rose Aff."), ¶¶ 1, 5-7).  Indeed, wage statements for nine of the proposed class representatives show that they were paid a "spread of hours wage" in a given work week on the line designated as "Split" or "Spt." (Sharon Rose Aff., ¶¶ 9-10; Detail Payroll Registers, attached as Exhs. A, B to Sharon Rose Aff.).  The plaintiffs have not proffered any evidence to show that these payments were calculated incorrectly.  Further, with respect to Mr. Lin's wage statements, Ms. Rose asserts that the inaccuracies can be attributed to using an erroneous rate that did not yet reflect a change in the minimum wage and an error by an individual manager, who was responsible for

reporting the number of spread of hours payments due to Mr. Lin. (Sharon Rose Aff., ¶¶ 6, 12).

In light of the scant evidence of a company-wide policy, largely rebutted by Ms. Rose's affidavit, the plaintiffs have not established that the Haru restaurants maintained a policy or practice of not paying the proper amount of spread of hours wage during the entire Class Period.

However, as the plaintiffs point out, there is no evidence that any of the Haru restaurants paid any spread of hours wages before June 25, 2009. (Reply at 8; Detail Payroll Registers, attached as Exh. A to Reply). The Detail Payroll Registers for pay periods before June 25, 2009, do not contain any spread of hours payments. (Detail Payroll Register, attached as Exh. A to Reply). It is possible that the individuals identified in the wage statements did not work for more than 10 hours in any day before June 25, 2009, but, despite the plaintiffs' request, the defendants have failed to produce the clock-in, clock-out time sheets, which would resolve this uncertainty. (Reply at 8 n.3). Absent such records, it is appropriate to infer that the plaintiffs' hours of work prior to June 25, 2009, were similar to their hours thereafter, and that they were entitled to spread of hours pay. Accordingly, the issue of whether the defendants had a policy of not paying spread of hours wages before June 25, 2009, is amenable

to class resolution.   However, only the employees who were paid minimum wage before June 25, 2009, can raise this claim because, until January 1, 2011, the employers were required to pay spread of hours wages only to the minimum wage employees.  See Espinosa, 2007 WL 656271, at *2.

The plaintiffs have satisfied the typicality requirement for this claim.   The sworn declarations of the class representatives show that most of them were employed by the Haru restaurants at minimum wage before June 25, 2009, and would have been affected by the defendants' alleged improper policy.[3]  Therefore, a class of minimum wage employees employed by the defendants between February 18, 2004, and June 25, 2009, satisfies the commonality and typicality requirements.

## ii. Wage Statements

The plaintiffs have also demonstrated commonality and typicality of the proposed class with regard to their wage statement claim.  Mr. Rose testified that the sample wage statement form (Wage Statement of Sidronio Solano dated May 12, 2011 ("Solano Wage Statement"), attached as Exh. A to Pl. Memo.) is typical of

---

[3] Declaration of Lye Ming Aw dated July 3, 2012 ("Aw Decl."), ¶ 1, 3; Wang Decl., ¶ 1, 3; Li Decl., ¶ 1, 2; W. Lin Decl., ¶ 1, 3; Vivar Decl., ¶ 1, 3; Liang Decl., ¶ 1, 3; Mendoza Decl., ¶ 1, 3; Zhuo Decl., ¶ 1, 3; Shi Decl., ¶ 1, 3; Declaration of Ling Ping Yang dated July 8, 2012 ("Yang Decl."), ¶ 1, 3; Declaration of Hong Jun Zhang dated July 3, 2012 ("Zhang Decl."), ¶ 1, 3.

what all employees receive.  (Seth Rose Dep. at 256-57).  The plaintiffs claim that the wage statement omitted the employer's trade name, address, and phone number as required under NYLL § 195(3).  (Pl. Memo. 4-5).  Resolution of the sufficiency of the common form of the defendants' wage statement is thus likely to produce common answers for the proposed class as a whole.

### iii. Wage and Hour Notices

There is a factual dispute as to whether there is a company-wide policy of providing improper wage and hour notices.  While relevant factual disputes should be resolved at the certification stage, Myers, 624 F.3d at 547, this claim can more easily be resolved by addressing the typicality requirement first without the fact-intensive inquiry into whether the defendants maintained such a company-wide policy.  Cf. Lewis Tree Service, Inc., 211 F.R.D. at 231 (certification motion should not "become a mini-trial on the merits").

Under the WTPA, an employer is obligated to provide a wage and hour notice to employees: (1) "at the time of hiring" and (b) "on or before February first of each subsequent year of the employee's employment with the employer."  NYLL § 195(1)(a).

The first paragraph of NYLL § 198(1-b) accords an individual employee a private right of action to recover damages when the "employee is not provided within ten business days of his or her

<u>first day of employment</u> a notice as required by [§ 195(1)(a)]."
(emphasis added).  The next paragraph gives the Commissioner of
Labor the power to "bring any legal action necessary, including
administrative action" "[o]n behalf of any employee not provided a
notice as required by [§ 195(1)(a)] of this article."   NYLL §
198(1-b).

The plaintiffs argue that the proper interpretation of the
statute is to "consider February first as the first day of
employment for existing employees" and "interpret § 198(1-b) as
providing a ten day time window to give notices to employees either
from the date of hire or February first of each subsequent year."
(Reply at 11).  However, the plaintiffs fail to cite any authority
or legislative history to support this interpretation.

The plain language of the statute, as the defendants argue,
confers a private right of action upon those who do not receive
their notice at the time of hiring, but not upon those who do not
receive it on or before February first of any subsequent year.
NYLL § 198(1-b). In contrast, the provision giving the Commissioner
of Labor the power to bring an action does not contain any
limitations.  Therefore, the proper interpretation of NYLL § 198(1-
b) is that only employees who did not receive a proper wage and
hour notice at the time of hiring can sue for a penalty pursuant to
§ 198(1-b).

18

Every single one of the class representatives began working before April 9, 2011, the date the WTPA went into effect.[4]   Thus, none of them was entitled to receive a wage and hour notice "at the time of hiring."   Accordingly, if there were a class consisting of employees who are entitled to bring a private right of action to recover damages pursuant to § 198(1-b), none of the putative class representatives is typical of any member of that class.

3.   Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."   Fed. R. Civ. P. 23(a)(4).   Adequacy is satisfied where "(1) plaintiff's interests are [not] antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced[,] and able to conduct the litigation."   Baffa v. Donaldson, Lufkin & Jenrette Securities Corp., 222 F.3d 52, 60 (2d Cir. 2000).

Satisfaction of the typicality requirement "is strong evidence that [the plaintiffs'] interests are not antagonistic to those of the class; the same strategies that will vindicate [the plaintiffs'] claims will vindicate those of the class."   Damassia

---

[4] Aw Decl., ¶ 1; Wang Decl., ¶ 1; Li Decl., ¶ 1; W. Lin Decl., ¶ 1; Vivar Decl., ¶ 1; Liang Decl., ¶ 1; Mendoza Decl., ¶ 1; Zhuo Decl., ¶ 1; Shi Decl., ¶ 1; Yang Decl., ¶ 1; Zhang Decl., ¶ 1; Solano Decl. ¶ 1; Ni Decl., ¶ 1.

v. Duane Reade, Inc., 250 F.R.D. 152, 158 (S.D.N.Y. 2008). However, a court can consider other factors such as the class representatives' credibility, Attenborough v. Construction and General Building Laborers' Local 79, 238 F.R.D. 82, 100 (S.D.N.Y. 2006), and the availability of "unique defenses which threaten to become the focus of the litigation," Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990).

First, with respect to the spread of hours claim, the defendants challenge the credibility of ten class representatives on the basis of their declarations. They assert that the representatives claim "never receiv[ing] spread pay." (Def. Memo. at 23). The defendants are correct that one of the representatives, Guan Ming Lin, testified that he "was not paid a spread of hour premium during the period of [his] employment" (Declaration of Guan Ming Lin dated Dec. 30, 2010 ("G. Lin Decl."), ¶ 4), while in fact he was (Sharon Rose Aff., ¶ 8). However, the rest of the class representatives only allege that they were "not properly paid" their spread of hours wage, rather than claiming that they were never paid spread of hours wage.[5] One misstatement among fourteen class representatives is not sufficient to cast in

_____

[5] Supra, note 2.

doubt the credibility of all of them.

Next, the defendants rely on Dauphin v. Chestnut Ridge Transportation Inc., No. 06 Civ. 2730, 2009 WL 2596636 (S.D.N.Y. Aug. 20, 2009), to argue that a "unique defense" to the wage statement claim disqualifies the class representatives from being adequate representatives. (Def. Memo. at 23-27). They point to NYLL § 198(1-d), which provides an affirmative defense against improper wage statements claim if "the employer made complete and timely payment of all wages due." NYLL § 198(1-d). They argue that the availability of this defense may "prejudice absent class members." (Def. Memo. 26).

However, the defendants' reliance is misplaced. The relevant factor in Dauphin was that there was a "unique defense" that applied specifically to the named plaintiffs, but not necessarily to all class members. Dauphin, 2009 WL 2596636, at *3. The court was concerned about prejudice to absent class members to whom the defendant's affirmative defense would not apply. Id. In contrast, the defendants here have not identified unique defenses that would apply only to the named plaintiffs. The defense provided by NYLL § 198(1-d) would apply consistently across the entire class, and therefore there is no "'danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" Id. (quoting Gary Plastic Packaging Corp., 903 F.2d at

21

180).[6]  Thus, the class representatives can fairly and adequately protect the interests of the class for the remaining claims. Further, it is undisputed that plaintiffs' counsel can fairly and adequately represent the interests of the class.

        4.   Rule 23(b)(3)

           i.  Predominance

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997); Fed. R. Civ. P. 23(b)(3).  Generally, a plaintiff must "establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." In re Visa Check/MasterMoney Antitrust Litigation, 280 F.3d 124, 136 (2d Cir. 2001) (alteration in original) (internal quotation marks omitted), overruled on other grounds by In re Initial Public Offerings Securities Litigation,

---

      [6] Although the defendants do not raise this issue in connection with typicality, the analysis and the result would be the same.  See Caridad v. Metro-North Commuter Railroad, 191 F.3d 283, 293 (2d Cir. 1999) (typicality "requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class") (internal quotation marks omitted), overruled on other grounds by In re Initial Public Offerings Securities Litigation, 471 F.3d 25 (2d Cir. 2006).

471 F.3d at 42, and superseded on other grounds by Fed. R. Civ. P. 23(g), as recognized in Attenborough, 238 F.R.D. at 100; accord In re Nassau County Strip Search Cases, 461 F.3d 219, 227 (2d Cir. 2006) ("[A]n issue is common to the class when it is susceptible to generalized class-wide proof.").

The spread of hours claim satisfies the predominance requirement.  The defendants argue that "Class Representatives who claim they never got spread pay did, in fact receive it" strongly suggests likelihood of individualized inquiries into whether the class members received spread pay.  (Def. Memo. at 14).  However, as discussed above, this is a mischaracterization of the plaintiffs' declarations.  The question of whether the defendants paid spread of hours wage before June 25, 2009 is "susceptible to generalized class-wide proof."

The wage statement claim also satisfies the predominance requirement.  In order to establish the defendants' liability, the plaintiffs must (1) establish that the wage statements the defendants provided did not satisfy the requirements under NYLL § 195(3), and (2) overcome the defendants' affirmative defense that they made "complete and timely payment of all wages due."  NYLL § 198(1-d).  Among all questions of law and fact, the common questions on the adequacy of the wage statements predominate over any individual questions raised by the defense.

The defendants argue that the NYLL § 198(1-d) defense requires the court to determine liability with respect to each plaintiff on an "individual-by-individual" basis.[7]  (Def. Memo. at 27-28). However, "the fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." In re Visa Check, 280 F.3d at 138 (internal quotation marks omitted).  "[A]s long as a sufficient constellation of common issues binds class members together, variations in the sources and application of [a defense] will not automatically foreclose class certification." Id. (second alteration in original) (internal quotations marks omitted).

The class members here are all bound by common issues.  They are all employed by the same employer, and all receive the same type of wage statement.  Thus, the key issue regarding this class

---

[7] The plaintiffs argue that the defendants are disqualified from raising the statutory defense because they failed to pay spread of hours wages owed to the plaintiffs.  (Reply at 12-13). However, as discussed above, the spread of hours claim as to pay periods after June 25, 2009, is not established by a preponderance of evidence.  The fact that the plaintiffs may be able to establish liability as to failure to pay proper spread of hours wages before June 25, 2009, does not alter this conclusion.  The WTPA, which requires the wage statements, went into effect on April 9, 2011. As such, any alleged failure to pay spread of hours wages before June 25, 2009, does not affect the defendants' ability to raise the statutory defense.  See Wicaksono v. XYZ 48 Corp., 10 Civ. 3635, 2011 WL 2022644, at *6 n.2 (S.D.N.Y. May 2, 2011), report and recommendation adopted, 2011 WL 2038973 (S.D.N.Y. May 24, 2011) (finding that WTPA does not apply retroactively).

is whether the defendants had a general policy of providing inadequate wage statements. The plaintiffs have adduced evidence that the common policy exists, relying on generalized, class-wide proof with the sample wage statement and the deposition of Mr. Rose. (Solano Wage Statement; Seth Rose Dep. at 256-57); see also Flores v. Anjost Corp., __ F.R.D. __, __, 2012 WL 2339267, at *17 (S.D.N.Y. June 19, 2012) (lawfulness of defendant's general policy will depend on common proof); Alonso v. Uncle Jack's Steakhouse, Inc., No. 08 Civ. 7813, 2011 WL 4389636, at *3 (S.D.N.Y. Sept. 21, 2011) (company-wide policies are subject to generalized proof).

Further, the individualized proof will involve exactly the same type of evidence for every single plaintiff: the defendants' business payroll record. Indeed, there is no reason to believe that the defendants' practice of paying their employees would vary from one employee to the next. This type of inquiry is in sharp contrast to the type of fact-intensive, individual-specific proof that the courts in this Circuit have found to predominate over common questions. E.g., Myers v. Hertz Corp., 624 F.3d 537, 548 (2d Cir. 2010) (question of determining primary duties of each employee predominates over common questions); Moore v. PainWebber, Inc., 306 F.3d 1247, 1255 (2d Cir. 2002) (proof of statements made to each plaintiff, nature of material misrepresentation, and reliance upon misrepresentation predominates over generalized

proof); <u>Dauphin</u>, 2009 WL 2596636, at *3-4 (individualized interstate travel record predominate over generalized proof).[8]

Finally, there is no concern that the availability of this defense will cause the court any "difficult[y] in managing a class action," a factor to be considered in the predominance inquiry. Fed. R. Civ. P. 23(b)(3)(D). Rather, certification would further the purposes behind Rule 23, which seek greater efficiency by "promot[ing] uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Fed. R. Civ. P. 23(b)(3) advisory committee's note (1966 Amendment). In light of such purposes, the Second Circuit has held that when the plaintiffs are "'allegedly aggrieved by a single policy of defendants,'" such as the inadequate wage statements allegedly provided to all employees here, "the case presents 'precisely the type of situations for which the class action device is suited' since many nearly

---

[8] The individual issues here are no more substantial in the overall mix of issues than the individual issues on damages that courts have routinely held as not to bar class actions. <u>See, e.g.</u>, <u>Bresson v. Thomson McKinnon Securities, Inc.</u>, 118 F.R.D. 339, 343 (S.D.N.Y. 1988) (presence of individual issues of damages does not generally defeat certification if common liability issues otherwise predominate); <u>Noble</u>, 224 F.R.D. at 345 (individualized damages inquiries do not bar certification). The mechanics of determining the validity of the defense here -- comparing the wages paid against wages due -- will essentially be the same as the mechanics of calculating individual damages in most class action lawsuits claiming unpaid wages.

identical litigations can be adjudicated in unison.'" In re Nassau County Strip Search Cases, 461 F.3d at 228 (quoting In re Visa Check, 280 F.3d at 146).

Accordingly, the common issue of the propriety of the wage statements predominates over the individual questions raised by the statutory defense.

ii.  Superiority

Lastly, Rule 23(b) requires a showing that the "class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3). "Courts routinely hold that a class action is superior where . . . potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by [the] Defendant."  Whitehorn v. Wolfgang's Steakhouse, Inc., 275 F.R.D. 193, 200 (S.D.N.Y. 2011).  The defendants do not contest this prong.  Further, "[c]ourts in this Circuit [] have found that permitting New York Labor Law claims to proceed as Rule 23(b)(3) class action, along with FLSA collective action, is a superior method."  Trinidad v. Breakaway Courier Systems, Inc., No. 05 Civ. 4116, 2007 WL 103073, at *9 (S.D.N.Y. Jan. 12, 2007) (collecting cases).  Therefore, this prong has been satisfied for the remaining claims.

5.   <u>Ascertainability</u>

In addition to the explicit Rule 23 requirements, courts in this Circuit have also required "ascertainability." <u>See, e.g</u>, <u>In re Initial Public Offering Securities Litigation</u>, 471 F.3d at 30, 44-45.   "An identifiable class exists if its members can be ascertained by reference to objective criteria." <u>Stinson v. City of New York</u>, 282 F.R.D. 360, 367 (S.D.N.Y. 2012).   "Where any criterion is subjective, <u>e.g.</u>, state of mind, the class is not ascertainable." <u>Spagnola v. Chubb Corp.</u>, 264 F.R.D. 76, 97 (S.D.N.Y. 2010).

In other words, "the ascertainability requirement means that the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." <u>Stinson</u>, 282 F.R.D. at 373. "It is designed only to prevent the certification of a class whose membership is truly indeterminable." <u>Id.</u> at 373-74.   Further, "[c]lass members need not be ascertained prior to certification, but must be ascertainable at some point in the case." <u>Noble</u>, 224 F.R.D. at 338.

The defendants argue the plaintiffs' proposed class is not ascertainable. (Def. Memo. at 30-32).  They contend that the court would be forced to "conduct an individualized analysis" to determine whether the defendants are liable as to each individual

28

plaintiff.  (Def. Memo. at 30-31).  However, courts in the Second Circuit routinely grant certification "where the proposed class definition relies in part on the consideration of the defendants' alleged liability.  Noble, 224 F.R.D. at 341 (footnote omitted). "Were it otherwise, the benefits of the class action mechanism could be significantly undermined because plaintiffs seeking relief based upon a defendant's alleged unlawful practice or policy might be precluded from collectively bringing suit."  Id. at 342 (emphasis in original).

Accordingly, courts in this district have found that a proposed class based on spread of hours and wage statement claims is ascertainable.  See Mendez v. Pizza On Stone, LLC, No. 11 Civ. 6316, 2012 WL 3133547 (S.D.N.Y. Aug. 1, 2012) (certifying class on plaintiffs' invalid tip credit claim, spread of hours claim and NYLL wage and hour notices claim); Flores, __ F.R.D. __, 2012 WL 2339267 (certifying class on plaintiffs' invalid tip credit claims, spread of hours claims, NYLL wage statement claims and uniform claims).

Here, the plaintiffs' proposed class is ascertainable.  This class of non-exempt employees is delineated by objective criteria, such as the name of the employer, the employment period, and whether the employee is paid minimum wage.  Membership in the class can be ascertained by objective documentation, such as the

defendants' payroll records and wage statements; and no subjective criteria are required to determine the class' contours.  See id. at *9.  The fact that an analysis of the defendants' data is necessary does not render a class unascertainable.   Id.   Therefore, the proposed class satisfies the ascertainability requirement.

C.   Supplemental Jurisdiction

The defendants argue that the plaintiffs' wage statement claim raises novel questions under state law that "will predominate over the federal FLSA claims."  (Def. Memo. at 34).  They ask the court to refrain from exercising supplemental jurisdiction over the issue.[9]  This request should be denied.

"A court with original federal jurisdiction over certain claims has supplemental jurisdiction over state law claims 'that are so related . . . that they form part of the same case or controversy under Article III of the United States Constitution.'" Bray v. City of New York, 356 F. Supp. 2d 277, 282 (S.D.N.Y. 2004) (alteration in original) (quoting 28 U.S.C. § 1367(a)).  Two claims constitute the "same case or controversy" when they arise from a "common nucleus of operative fact."  See Jones v. Ford Motor Credit Co., 358 F.3d 205, 213-14 (2d Cir. 2004).

_____

[9] The defendants make the same argument with respect to the plaintiffs' wage and hour notices claim.  However, because I recommend a denial of class certification for that claim, I need not address the defendants' argument with respect to that claim.

Section 1367(c) further provides, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if (1) the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1).   Even then, the court should exercise supplemental jurisdiction if doing so would promote judicial "economy, convenience, fairness, and comity." <u>Jones</u>, 358 F.3d at 214; <u>see also</u> <u>Itar-Tass Russian News Agency v. Russian Kurier, Inc.</u>, 140 F.3d 442, 446-47 (2d Cir. 1998) ("[T]he discretion implicit in the word 'may' in subdivision (c) of § 1367 permits the district court to weigh and balance several factors, including considerations of judicial economy, convenience and fairness to litigants.").

The defendants do not dispute that the wage statement claim is part of the same case or controversy as the federal law claims. All of the claims in this action revolve around the employment relationship between the Haru restaurants and the plaintiffs. Rather, they argue that § 1367(c)(1) prohibits the court from exercising supplemental jurisdiction. (Def. Memo. at 33-34).   The plaintiffs concede that the issues raised under NYLL § 195(3) are novel, but they contend that they are not complex. (Reply at 19-20).

The state law issues presented in this action are novel, as the WTPA has been in effect only for about 17 months.   However,

they are in no way complex.  The statutory language clearly and unambiguously explains what the wage statements must contain, what reliefs the employees may seek for receiving inadequate wage statements, and what affirmative defenses the employer may raise. NYLL §§ 195(3), 198(1-d).

Further, the cases that the defendants cite are distinguishable.  Those cases involved issues heavily debated between state and federal courts or ambiguity in the statutes. E.g., Spiegel v. Schulman, No. 03 CV 5088, 2010 WL 3619577, at *1 (E.D.N.Y. Sept. 9, 2010) (declining supplemental jurisdiction because it was unsettled in New York courts whether obesity is disability within meaning of state disability discrimination law); Bray, 356 F. Supp. 2d at 283-84 (declining supplemental jurisdiction because of ambiguity of words "parade or process"); Fiacco v. Christie's Inc., No. 00 Civ. 526, 2002 WL 257693, at *3 (N.D.N.Y. Feb. 21, 2002) (declining supplemental jurisdiction noting split within New York courts on issue).  In contrast, although no state court has addressed this issue, no ambiguity exists as to what NYLL § 195(3) requires or how an employer can assert an affirmative defense.

Lastly, exercising supplemental jurisdiction promotes judicial economy, especially considering that this case is proceeding as a collective action under the FLSA.  Guan Ming Lin, 275 F.R.D. at

170.  Proceeding in a single action will spare all parties the burden of litigating in multiple courts with the attendant risk of confusing the Class Members.  Indeed, courts in this district have regularly asserted supplemental jurisdiction over the state wage statement claims.  See, e.g., Mendez, 2012 WL 3133547; Flores, __ F.R.D. __, 2012 WL 2339267.  Considering the straightforward nature of the state issues, judicial economy and fairness favor a single action, and exercise of supplemental jurisdiction is appropriate.

D.   Production of Employee Information

The plaintiffs request that the Court order the production "in Excel format of the names, last known mailing addresses, all telephone numbers, position, dates of employment and weekly hours worked for all Class Members." (Pl. Memo. at 3).  The defendants do not object to this, and there is no reason to deny it, especially because the defendants were previously ordered to produce similar information.  Guan Ming Lin, 275 F.R.D. at 170.

E.   Access to the Defendants' Restaurants

The plaintiffs seek access by plaintiffs' counsel to each of the defendants' restaurants during regular business hours. (Pl. Memo. at 2).  However, the plaintiffs do not allege facts that explain why this is necessary.  Previously, I denied the plaintiffs' request to access the defendants' restaurants without prejudice to renewal upon a showing that the defendants have not

complied with a court order to post the class notice at a location that is reasonably expected to be viewed by prospective Class Members.  (Memorandum Endorsement dated Aug. 25, 2011).  The plaintiffs fail to make such a showing and merely cite cases in which courts have authorized the posting of notices at the employers' premises. (Reply at 1 n.2).

<u>Conclusion</u>

For the reasons set forth above, I recommend the following:

(1) that the plaintiffs' motion to certify the class action be granted as to the following classes:

>    (i) Wage Statement Claim: this class consists of all current and former non-exempt employees employed by the Haru restaurants from February 18, 2004, until the present;

>    (ii) Spread of Hours Claim: this class consists of all current and former non-exempt employees employed by the Haru restaurants at minimum wage from February 18, 2004, until June 25, 2009;

(2) that the fourteen named plaintiffs be designated as class representatives and that Lee Litigation Group, PLLC, be appointed as class counsel;

(3) that the parties be given an opportunity to confer and submit joint or separate proposed notices;

(4) that the defendants be ordered to produce the names, last known addresses, telephone numbers, positions, dates of employment, and weekly hours worked for all employees of the Haru restaurants from February 18, 2004, until the present and identify minimum wage employees from February 18, 2004, through June 25, 2009;

(5) that the plaintiffs' motion be denied in all other respects.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Ronnie Abrams, Room 620, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.  Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          October 23, 2012

Copies mailed this date to:

C.K. Lee, Esq.
Lee Litigation Group, PLLC
30 East 39th Street, Second Floor
New York, New York 10016

Dennis A. Lalli, Esq.
Bond, Schoeneck & King, PLLC
330 Madison Avenue, 29th Floor
New York, New York 10017